Saint Paul's Reformed Church of Bethel Township, for-
merly called Klopp's Church, Appellant, *v.* George
Hower, Adam Spitler, Henry Werner, Henry Lutz,
Ezra Spitler, Franklin Grimes, Harry Murray, Irwin
Peiffer and Jacob R. Meck, officers of the so-called
St. Paul's Reformed Church.

*Churches—Church law—Division of congregation.*

On the division of a body that ought to be a unit, the test of which repre-
sents the legitimate social succession is, which of them has maintained the
regular forms of organization according to the laws and usages of the body,
or, in the absence of these, according to the laws, customs and usages of
similar bodies in like cases, or in analogy to them; this is the uniform rule
in such cases, and is always applied in the case of church divisions.

The title to the church property of a congregation that is divided is in
that part of the congregation that is in harmony with its own laws, usages
and customs as accepted by the body before the division took place, and
who adhere to the regular organization.

*Churches—Division of congregation—Ejectment—Estoppel in pais.*

Where a whole congregation resolves to build a new church, but no ac-
tion is taken on the plans submitted, and subsequently a minority of the
congregation set apart by metes and bounds and fence a small portion of
the church lot, honestly believing that they have title to it, and erect there-
on a church, costing about $15,000, and taking two years to complete, and
no objection is made until ten years afterwards, the legal congregation,
having full knowledge that the conduct of the minority rests on a belief
in their right, will be estopped from recovering by ejectment the land ap-
propriated by the minority.

Argued March 1, 1899. Appeal, No. 24, Jan. T., 1899, by
plaintiff, from judgment of C. P. Lebanon Co., June T., 1895,
No. 399, on verdict for defendants. Before STERRETT, C. J.,
GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Ejectment for a lot of land in Bethel township. Before AL-
BRIGHT, P. J., of the 31st judicial district, specially presiding.
The facts appear by the opinion of the Supreme Court.
The court gave binding instructions for defendants.
Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were in giving binding instructions for de-
fendant.

*Cyrus G. Derr,* with him *J. M. Funck,* for appellant.—By the paper dated October 28, 1825, signed by the Reformed members and accepted by the Lutheran members; by the "Proclamation" of April 29, 1827, together with the uniform practice of all the parties concerned, extending over a period of more than fifty years, there was created a religious society which, under the laws of Pennsylvania, was and is a quasi corporation, consisting of the aggregate membership of the church, both Lutheran and Reformed, with an organic or fundamental law the provisions of which are evidenced by the said paper of 1825 and the said proclamation of 1827.

The title to real estate acquired under the deed of 1767, as well as the real estate subsequently purchased, became vested in the quasi corporation known as St. Paul's church, and Klopp's church, and was to be owned, managed and enjoyed in accordance with the fundamental law of the organization, the rights of the individual members inhering in them merely as members, and no fragment of the membership repudiating and acting in violation of such fundamental law can lawfully seize and hold sole and exclusive possession of any part of the church property, without subjecting itself to dispossession in an action of ejectment by the quasi corporation: Brown v. Lutheran Church, 23 Pa. 495.

The plaintiff in this case must be regarded as the St. Paul's church, or Klopp's church, so constituted as aforesaid, and as such the owner of the property in question, and the defendants must be regarded as wrongfully in possession of the said property, and therefore subject to be dispossessed by action of ejectment at the instance of the plaintiff: McGinnis v. Watson, 41 Pa. 15; Kerr v. Trego, 47 Pa. 296; Krecker v. Shirey, 163 Pa. 551; Brown v. Lutheran Church, 23 Pa. 495.

The decree in the case of St. Paul's Reformed Church et al. v. Benjamin Boltz et al., No. 5, equity docket, 1885, must in this case be taken as an estoppel upon the defendants, and as a judicial and conclusive determination of the question here involved: Marsh v. Pier, 4 Rawle, 285; Dewey v. St. Albans Trust Co., 12 Atl. Rep. 227.

*George B. Woomer,* for appellee.—A corporation must on trial prove its corporate character: Zion Church v. St. Peter's Church,

5 W. & S. 215; Liederkranz Singing Society v. Germania Turn Verein, 163 Pa. 265; Me. Union Church v. Pickett, 19 N. Y. 482; and why not an unincorporated association? It would certainly be more dangerous to permit this proof to be waived in the latter case than in the former: Landis's App., 102 Pa. 467; Brown v. Mfg. Co., 1 Phila. 73.

The deed of 1767 conveys the land in controversy in trust for the use of a church or congregation of the Reformed church in the United States. The language of the deed is almost precisely the same as that used in the cases of Henry v. Deitrich, 84 Pa. 286; Roshi's App., 69 Pa. 462; Schnorr's App., 67 Pa. 138; Brendle v. German Reformed Congregation, 33 Pa. 415; Unangst v. Shortz, 5 Wharton, 506.

Denominational connection can be inferred from the use of the denominational name: Schlichter v. Keiter, 156 Pa. 119.

The obligation of a congregation to remain in regular standing in its own denomination, and in subjection to the tribunals thereof, has lately been strongly set forth in the Evangelical cases. That the same rules apply in the Reformed denomination is shown by the cases of Sutter v. Trustees, First Reformed Dutch Church, 42 Pa. 510; Roshi's App., 66 Pa. 462; Schnorr's App., 67 Pa. 138.

A church endowed in connection with an ecclesiastical organization, or subordinate to it, cannot unite with another organization, or become independent: Roshi's App., 69 Pa. 462; Fuchs v. Meisel, 1 Am. & Eng. Decisions in Equity, 700; Krecker v. Shirey, 163 Pa. 534.

The customs of one portion of the society cannot deprive the other portion of its rights: Saver's App., 81 Pa. 183.

OPINION BY MR. JUSTICE DEAN, May 8, 1899:

About one hundred and thirty-two years ago, a small Christian congregation, made up of German Protestants and Lutherans, established the "Reformed Church of Bethel township in Lebanon county." On November 13, 1767, John Fox and others conveyed to trustees for this Reformed church, a tract of a little more than eight acres of land. The conveyance itself expresses, that it is made agreeably to the provisions of the Act of February 6, 1730, 1 Sm. L. 193, authorizing Protestant religious societies to take conveyances of land for religious and

burial purposes.   The evidence indicates, that those holding to the creed of the Reformed church and the Lutherans worshiped together, without friction, in the little church building first erected by their joint contributions and efforts for about fifty years.   It then became necessary to erect a new and larger building; at this time, by agreement, two distinct religious bodies, one Reformed and one Lutheran, were organized; these occupied the church separately, neither to the exclusion of the other, but so arranging their services as to dates that there was no interference.   This continued for about sixty years.   The nature of this union of members in one congregation, with a severance of creed, is perhaps best indicated by article 2 of what is called the proclamation of 1827, thus:

"Article 2. Each congregation elects its own pastor, and if the one or the other side elects a pastor, the other side must be satisfied, namely, so long as the procedure is in accordance with the regulations of our forefathers and in accordance with the word of God, and in accordance with the regulations of the Evangelical Reformed and of the Evangelical Lutheran Church; also, in no case shall a minister be accepted for ministrations in this church who is not a member of either of the aforesaid Lutheran or Reformed Synod."

Those adhering to the Reformed creed were probably greater in numbers and wealth than the Lutherans.   This joint occupation of the church continued from 1827 until 1882.   Population had increased, and with it the membership of both sects, so that the second church building was insufficient.   A congregational meeting was held February 17, 1882, and it was determined by a practically unanimous vote to erect a new building. To this end, a building committee was appointed who, on March 10, following, reported to another union meeting, location, plans and details for the new church.   These were discussed, but nothing definite was agreed upon.   Delay followed; the members of the Reformed body became impatient and irritated at the delay, and on February 13, 1884, at a meeting of that particular part of the old congregation, it was resolved to build a new church themselves, and permit the use of it by the Lutherans, if the latter contributed $2,000 towards the cost.   While the Lutherans did not formally reject the offer, they did not accept it; they said nothing.   The Reformed body, then, on July 12

1884, by a vote of sixty-seven to fifty-three, resolved to build a new church for themselves; the minority went back and acted thereafter with the Lutherans, and together they remodeled and repaired the old church; the majority of the Reformed body went upon the extreme end of the eight acre tract, and upon about three fourths of an acre erected a church building costing about $15,000. In that new building they have continued to worship as a separate body, and have been recognized by the classis of the Reformed church as the regular St. Paul's Reformed congregation. The Lutherans, and those of the Reformed body who adhered to the old organization, have continued to occupy the old but remodeled church as before the separation. The land appropriated for the new building is well marked by a fence, and the distance between the two churches is such that neither congregation in its services interferes with the other. Those who built the new church, after recognition by the church authorities as the Reformed church, laid claim to all the land upon which were both buildings, and undertook to assert their claim in equity proceedings, which claim, after full hearing, was defeated and the bill dismissed. Almost ten years afterwards, the old organization brought this ejectment to oust the Reformed body from the possession of the three quarters of an acre of land and the new building. The plaintiffs claimed at the trial in the court below, that the history of the organization from the beginning, and especially the paper called the "Proclamation," must be regarded as determining the fundamental law of this particular organization; that under it all questions concerning the property must be decided by a vote of the members acting together in joint assembly; that, as those building the new church were but a minority of the whole, and as the majority did not concur, the minority must be treated as seceders from the organization and intruders upon the church land. The learned judge of the court below, while not expressly negativing this proposition, nevertheless held that, as the old organization contained two distinct elements, Lutherans and Reformed, holding distinct creeds, there was nothing in the original contract which made it perpetual; if the Reformed thought best to separate from the old organization and erect a new church with a separate congregational government, they had the right so to do; especially, as there was land enough for both without

interference, and they did not disturb the old property, but left it to the free use of those who adhered to the old organization. He, thereupon, directed the jury to find for defendants. The burden of appellants' complaint before us is the opinion of the court as to the law, and the peremptory instruction to the jury.

The uncontradicted history of the church from 1767 to October 28, 1825, shows, by the interpretation of the parties, that the land was intended to be conveyed to and occupied by a union congregation composed of Reformed and Lutherans. Although the cestui que trust in the original deed was the " Reformed church in Bethel," nevertheless, one of the trustees was a Lutheran, and the occupation thereafter to 1825, by common consent, was by those holding to both creeds. Then, on the date mentioned, a paper duly executed by the Reformed members was placed among the archives, declaring thus :

" Know all men by these presents, That we, the undersigned, members of the Reformed Church, or the so-called Klopps Church, situate in Bethel township, Lebanon county, have given, for ourselves and our posterity, to the Lutherans in the same neighborhood and vicinity and their posterity a full right to aforesaid church, school house and land, the same as the Reformed have, so that it shall in the future be a union church, for all future time between the Reformed and Lutherans, with the understanding that the services of both denominations shall not be held at the same time, but everything shall be kept up by the aforesaid denominations."

Then, following this, on April 29, 1827, when the corner stone of the new church was laid, the document called the " Proclamation," was formally executed by the building committees and elders of both creeds. This sets forth in full a standard of Christian doctrine in which both concur, being wisely silent as to that wherein they differ ; then follow three articles, the second as heretofore quoted, which embody the fundamental law of government for the union church, thus :

" Article 1. Both the Lutheran and Reformed congregations have bound themselves together to erect jointly the St. Paul's Church, and that both sides shall have equal shares and rights."

Here follows article 2, already quoted ; then article 3. "In all lawful elections and decisions it shall at all times be left to the majority of votes whereunto each member obligates himself

to agree and to be satisfied with that which the majority of votes decides so long as it is done in accordance with proper order."

Under this law the organization continued down until the commencement of this strife in 1882, of which the present suit is the culmination. It is clear, in fact undisputed, that defendants are not only a minority of the union congregation, but also are only a part of the reformed body; a decided majority of the members did not concur in the building of the new church, though when the first vote on the policy of building was taken nearly all favored it. In erecting it at that time and in that place, by plain implication, the minority violated the fundamental law of the organization which owned the land, and of which organization they were members. In McGinnis v. Watson, 41 Pa. 15, we held, in case of a divided congregation, that, "That part of it which is acting in harmony with its own law must be approved and sustained by the state law. . . . The title depends upon the legitimate, orderly and regular maintenance of the organized congregation or succession of associated owners." In Kerr v. Trego, 47 Pa. 296, we again held as follows : "On the division of a body that ought to be a unit, the test of which represents the legitimate, social succession is, which of them has maintained the regular forms of organization according to the laws and usages of the body, or, in the absence of these, according to the laws, customs and usages of similar bodies in like cases, or in analogy to them. This is the uniform rule in such cases. It is always applied in the case of church divisions, and was so applied by us three times last year." And in the very late case of Krecker v. Shirey, 163 Pa. 551, in an opinion by our late Brother WILLIAMS, an opinion most amply vindicated by both reason and authority, we held : "The title to the church property of a congregation that is divided is in that part of the congregation that is in harmony with its own laws, usages and customs as accepted by the body before the division took place, and who adhere to the regular organization."

While we are satisfied that, by the judgment of the learned judge of the court below, the substantial justice of the dispute was reached, we do not think it can be sustained on the reasons given by him, without running counter to the settled law of the commonwealth. But, we are of opinion, it can be sustained on

another ground, which would be embraced in defendants' fifth prayer for instruction, viz : " That under all the evidence in the case, the verdict should be for defendant." The defendant set up a claim of right, as the Reformed congregation, to the property; they set apart by metes and bounds and fence three fourths of an acre of the land for a new church; proceeded to build upon it a church costing about $15,000 ; were about two years in building it, for it was not completed until some time in the year 1885 ; that building they have ever since occupied without legal objection on part of plaintiffs, until the institution of this ejectment. The decree in the bill in equity in which defendants asserted claim to all the property did not adjudicate their right of occupancy of the three quarters acres, for they sought to sustain that claim as owners of the legal title, which they were not, and the bill was properly dismissed. Besides, these plaintiffs were not parties to that bill, and were not the movers in denial of the new church's right. We have, then, the case of parties honestly believing they have title to land, continuing for months in the construction of a costly and conspicuous building upon it, before the eyes of the real owner, with full knowledge on his part that their conduct rests on a belief in their right; yet he stands by for more than ten years without any legal assertion of his right. For, notice the inception of the proceedings. The whole congregation resolves to build a new church; the committee prepare the plans, but the congregation as a whole does not act upon them ; then the minority, the nominal beneficiary in the original deed, proceed to set apart so much of the ground as is necessary for the new building; then they invite the others to contribute a small part of the expense; although a meeting of those thus invited was held, and the proposition was discussed, no action was taken. Now, ten years afterwards, the plaintiffs seek to eject defendants, and, although occupying the old church with more than seven eighths of the land undisturbed, they seek to appropriate the $15,000 church of defendants. We are aware that as a general rule, the mere silence of the owner of the legal title will not estop him from asserting it against an intruder ; but there is more than mere silence here ; there is a participation by the owner in the original proceedings to build ; then silence, while defendants expend their money under an open assertion of right

and apparent acquiescence by the owner for years in their claim. It is not our business to pass on the religious aspects of this dispute, but it is our business to determine whether, under the circumstances, in equity, plaintiffs are estopped from now asserting a right concerning which they have so long remained silent.

The case comes clearly within the ruling of this Court in Carr v. Wallace, 7 Watts, 394. There, an owner of a right of common stood silently by while the trustees of a theological seminary, under a belief as to their right, erected a large and costly building on land, which destroyed plaintiffs' right of common; this Court spoke thus: " What right has the plaintiff under these circumstances to complain of the disturbance of his right of common. There is no principle better settled, nor one founded on more solid considerations of equity and public utility, than that which declares that if one knowingly, though he do it passively, by looking on, suffer another to purchase and spend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and the conscience of plaintiff is bound by the equitable estoppel." We hold that it was plaintiffs' duty here to deny defendants' right to the land by a prompt legal assertion of their own right; then, on the event, defendants could have taken their $15,000 and have expended it elsewhere. Here, there seems to have been recrimination on both sides; plaintiffs called defendants revolutionists; defendants called plaintiffs usurpers; but the real point in dispute was the title to this small piece of land, which should have been settled by trespass or ejectment. We decide that, while under the undisputed facts, plaintiffs' title to all the remaining land is clear, they are estopped in equity from denying defendants' title to this three quarters of an acre. As to the decision of the classis in defendants' favor as to the whole tract and church property, we can only say, the law of the church in this particular is not the law of the land.

The judgment is affirmed.