THE RUSSIAN ORTHODOX GREEK CATHOLIC ST. PETER AND
ST. PAUL'S CHURCH OF LORAIN, OHIO, ET AL., APPELLEES,
*v.* BURDIKOFF ET AL., APPELLANTS.*

(No. 1558—Decided July 25, 1962.)

*Motion to certify the record overruled, December 19, 1962. Appeal dismissed, 174 Ohio St., 140. For other litigation in this matter, see 172 Ohio St., 440.

*Messrs. Dziama, Gordon & Ujhelyi, Mr. Charles H. Tuttle, Mr. Ralph M. Arkush* and *Mr. Stuart H. Johnson, Jr.,* for appellees.

*Mr. John R. Vintilla* and *Mr. Philip Adler,* for appellants.

HUNSICKER, J. An appeal on questions of law and fact has been lodged in this court from a judgment entered by the Common Pleas Court of Lorain County, Ohio. In this court the case is being tried *de novo* on the same testimony and exhibits presented to the trial court.

The temptation is very great to detail the history of the Orthodox Greek Catholic Churches of the Eastern Confession. The historical development of Christianity in the eastern churches is a subject that is not stressed in our schools, yet out of the Greek Catholic Churches much of the early foundation of the Christian Church was formed. The lives of its saints, and writings of its scholars, are worthy of emulation and study.

The Russian Orthodox Greek Catholic Church first came into the United States from Alaska. Thereafter, some churches were founded in California. It spread from west to east, and eventually established its seat in New York City. This church, being hierarchal, recognized as its primate and spiritual head the Patriarch of Moscow, Russia.

At the time of the revolution in Russia, and for some years thereafter, great confusion existed in the Russian Orthodox Churches in the United States as to the condition of the mother church. The attempt, by the Soviet government, to abolish religion, and particularly the Russian Orthodox Church, was widely known. The later attempt of the Soviet government to take control of the Russian Orthodox Church, as had been the case under the czars, was feared by the Russian Orthodox clergy and their congregations in the United States. The questions arose as to who was the canonically lawful patriarch, and who was his canonically lawful representative archbishop or exarch in America.

The problem of proper church authority was disturbing to the church in Lorain, Ohio, as well as to the other churches of the Russian Orthodox Confession in the United States. In April, 1924, representatives of Russian Orthodox churches met in a church convention, or sobor, in Detroit, Michigan. The conven-

tion had no desire to form a new church, but it did wish to become autonomous, rather than become an autocephalous church. This sobor did declare itself an administratively autonomous metropolitan district, known as The Russian Orthodox Catholic Church of America.

This metropolitan district is now known as the Metropolia, and it has been, since 1924, accepted as the leading Russian Orthodox Church in America. To the Patriarchate in Moscow it is deemed schismatic, and its clergy and people under interdict. The Metropolia has two theological seminaries and many churches.

There is a third group of churches which follow the rites and liturgy of the Russian Orthodox Church; this group is known as the Anastassy Synod, or Russian Church Abroad. We are not interested in that group herein, except that one of the appellants, the Reverend George Burdikoff, was first a priest in one of the churches functioning under its authority. He later switched his allegiance to the Metropolia, the ruling archbishop of which is now Metropolitan Leonty. The Reverend George Burdikoff later again switched his allegiance to the Patriarch of Moscow, and that action on his part gives rise to all of the controversy herein.

The appellee Church of St. Peter and St. Paul in Lorain, and its members, were faithful followers of the Patriarch of Moscow from the time of the founding of the Lorain Church in 1912, until in 1925, when they accepted the authority of the Metropolia. The Lorain Church became a corporation in 1920. In February, 1925, a new church building and improvements were contemplated, and the church corporation filed an action against Bishop Alexander of the Russian Orthodox Church and others to quiet the title to the church property. Judgment in that action was entered, and the title quieted in the parish corporation. Bishop Alexander was Bishop Alexander Nemalovsky, the acting ruling Bishop of the Russian Orthodox Church, in whose name, with others, title to the property was previously transferred.

Since 1925 the Lorain Church and its congregation have been served by a priest who accepted the authority of the Metropolia. It sent clergy and lay delegates to functions of the Metropolia, as well as the sobors held under the jurisdiction of the

Metropolitan of the Russian Greek Catholic Church in America, who is now Metropolitan Leonty.

The Lorain Church in all things supported the Metropolia, and has supported financially no other church group, except as it may have done so under the authority of the Metropolia.

The Reverend George Burdikoff was active in the affairs of the Metropolia and its deanery until in June 1960 he secretly accepted the authority of the Patriarch of Moscow by acknowledging his sin of schism. He thereafter received appointment to the Lorain Church as a priest subject to that religious prelate, instead of to Metropolitan Leonty.

The Metropolia has declared itself to be an autonomous religious body whose doctrine, discipline, and worship, are those of the one Holy Catholic and Apostolic Church, as taught by Holy Scripture, Holy Tradition, the Seven Ecumenical Councils, and the Holy Fathers, and as kept by the Orthodox Churches of the East. It is a member of the World Council of Churches, which accepts into its membership only autonomous church bodies. The Patriarch of Moscow has brought the Russian Orthodox Church into the World Council of Churches, thereby recognizing the Metropolia as an autonomous church.

Thus for 35 years one autonomous church body has occupied the church building, received dues and other monies, supported its superiors, and the superior church body, the Metropolia. In all this time the church which formerly claimed spiritual and temporal jurisdiction has done nothing to oust the group which it calls schismatic from occupation and control of the Lorain Church. It now seeks to do so by the subterfuge of a priest who has switched allegiance when it best served his personal interest.

When the action of the Reverend George Burdikoff became known to the congregation, complaint was made to Bishop John and Metropolitan Leonty, the superior church officers of the Metropolia in whose jurisdiction the Lorain church had functioned for 35 years. The Reverend George Burdikoff was ordered to move to a new parish, and, upon his refusal to do so—he claiming that these former superior ecclesiastics did not now have spiritual or temporal jurisdiction over him—he was deposed as a priest of the Metropolia.

Bishop John of the Metropolia, with the blessing of Met-

ropolitan Leonty, and at the proper request of the members of the Lorain church, then ordered a congregational meeting. At this meeting the plaintiff (appellee) officers and trustees of the parish were elected. These officials and the parish corporation then instituted the present action, asking that the defendants (appellants), who claim to be officers of the church, and the Reverend George Burdikoff, be enjoined from occuping the Lorain Church, and that the Reverend George Burdikoff be enjoined from officiating as a priest or rector of the congregation in the church building. The amended petition of the plaintiffs also prays for an accounting of all monies and funds of the parish, and that all property, both real and personal, be restored to the church under the jurisdiction of Metropolitan Leonty.

The defendants (appellants) deny that Metropolitan Leonty, or the Russian Orthodox Greek Catholic Church of America, has any right, title or interest in the Church of St. Peter and St. Paul of Lorain, Ohio. The appellants assert that this church is under the jurisdiction of the Patriarch of Moscow, and not subject to the claims of the Metropolia. They further say that the Reverend George Burdikoff was engaged on or about October 14, 1957, to serve this church as pastor for a period of 10 years, and that that contract is subsisting and in full force.

It has long been the accepted rule in the government of religious societies which are in association with an ecclesiastical system, that, where one or many of the members withdraw from the general church, they cannot take with them the church property. That property, in the absence of agreement, remains under the jurisdiction and control of the general church. 45 American Jurisprudence, Religious Societies, Section 16 *et seq.*, and authorities there cited; 76 Corpus Juris Secundum, Religious Societies, Sections 15 and 71b, and authorities there cited; 47 Ohio Jurisprudence (2d), Religious Societies, Section 20; *Trustees of Pencader Presbyterian Church* v. *Gibson*, 26 Del. Ch., 375, 22 A. (2d), 782; *Presbytery of the Everglades* v. *Morgan* (Fla.), 125 S. (2d), 762; *Bray* v. *Moses*, 305 Ky., 24, 202 S. W. (2d), 749; *Presbytery of Bismark* v. *Allen*, 74 N. D., 400, 22 N. W. (2d), 625.

The appellants insist that, under the above general rule, and two recent opinions of the Supreme Court of the United States, wherein matters affecting the Russian Orthodox Catho-

lic Church were decided, the injunction sought herein should be denied.

In the case of *Kedroff* v. *Saint Nicholas Cathedral of the Russian Orthodox Church in North America*, 344 U. S., 94, 97 L. Ed., 120, 73 S. Ct., 143, an action in ejectment was brought by the Metropolia against the patriarchal church, which occupied and conducted services in the cathedral. The ground of the action was a statute of New York which required the transfer and control of all New York churches of the Russian Orthodox religion from the central governing heirarchy of the Russian Orthodox Church, the Patriarch of Moscow, and the Holy Synod, to the governing authorities of the Russian Orthodox Church in America, or, as we have designated it herein, the Metropolia.

The court there said, at page 107 of 344 U. S.:

"* * * This transfer takes place by virtue of the statute. Such a law violates the Fourteenth Amendment. It prohibits in this country the free exercise of religion. * * *"

In the case of *Kreshik* v. *St. Nicholas Cathedral of the Russian Orthodox Church of North America*, 363 U. S., 190, 4 L. Ed. (2d), 1140, 80 S. Ct., 1037, the same issue was raised as was raised in the case of *Kedroff* v. *St. Nicholas Cathedral, supra*, except that the ejectment was based upon the common law claim that the Patriarch of Moscow could not validly exercise the right to occupy a cathedral of his faith. The court then reiterated that the right of the appointee of the Patriarch of Moscow to use and occupy a cathedral owned by the respondent (patriarchal) corporation was strictly a matter of ecclesiastical government.

These cases are no authority for the position taken by the appellants herein. Here the patriarchal church seeks, in effect, by means of the subterfuge of the Reverend George Burdikoff, to eject those who have occupied the church herein for a period of 35 years.

There can be no question in this case but that the money in banks, church money in the hands of the one who was acting as treasurer at the time of the attempted change to the allegiance of the Patriarch of Moscow, and such other church funds on hand at the time when the Reverend George Burdikoff sought to bring the church into the patriarchate, were monies contributed by those who accepted Metropolitan Leonty as their spirit-

ual leader. As to such funds there should be an accounting, conducted under the auspices of the trial court.

The real property in the instant case was used openly by those claiming the Metropolia as the church authority, under which the Church of St. Peter and St. Paul of Lorain, Ohio, functioned. Title to the church lands was in the corporation, whose officers held it for the use of the Metropolia. This provision for the use and benefit of the Metropolia lasted 35 years before a challenge was made by the Reverend George Burdikoff, acting for the Patriarch of Moscow.

Those who accept the Metropolitan Leonty and the Metropolia have expended money on the church property. They have in all things held the church out to the general public, to other church bodies, and to the Patriarch of Moscow, as an integral part of the autonomous Russian Orthodox Greek Catholic Church of America.

While adverse possession may not be the proper legal basis upon which to declare the church to be under the spiritual direction of the Metropolia, since title to the property has been and will remain in the corporation, nevertheless long continued acquiescence in the use by the Metropolia, the recognition by the Patriarch of Moscow that the Metropolia is a separate church body, and the many years that the officers of the corporation held the real property for the use and benefit of the Metropolia only, raises the issue of laches or of estoppel to now claim the right of spiritual jurisdiction.

Delay alone in asserting a right does not itself constitute laches; yet where, as here, there is knowledge and long acquiescence in the use of the property, the equitable doctrine of laches ought to apply. *Smith* v. *Smith*, 168 Ohio St., 447.

Whether we approach the problem from the statutory limitations of actions theory under claims of adverse possession, or on the theory of laches, equitable estoppel, or waiver of a known right, we must conclude that the spiritual jurisdiction of the Church of St. Peter and St. Paul of Lorain, Ohio, is within the Metropolia. The action brought in 1925 to quiet title in the corporation against Bishop Alexander was followed by submission to the Metropolia. It was the corporation which brought that action, and perhaps a claim of adverse use may not now be made against the same corporation, but surely waiver, estoppel

and laches constitute valid reasons why the Patriarch of Moscow should not now be permitted to claim spiritual jurisdiction of this church. *Greek Catholic Church of St. Michael's* v. *Archbishop Roizdestvensky*, 67 Colo., 217, 184 P., 295, 18 A. L. R., 690; *Puckett* v. *Jessee*, 195 Va., 919, 81 S. E. (2d), 425; *St. Paul's Reformed Church* v. *Hower*, 191 Pa., 306, 43 A., 221; 76 Corpus Juris Secundum, Religious Societies, Section 73; 45 American Jurisprudence, Religious Societies, Section 69; 76 A. L. R., 304. See, also, *Romanian Orthodox Missionary Episcopate of America* v. *Trutza*, 205 F. (2d), 107.

The Reverend George Burdikoff says that he entered into a contract to serve this church. The term of the contract was 10 years. Only a portion of that time has elapsed, and hence he claims the right to continue as priest. There is no merit whatsoever in such claim. He breached his contract by making his submission to Moscow; he violated the conditions under which he was serving this church; and he cannot now be heard to complain that he is deprived of a right under a contract which he himself repudiated.

It is the judgment of this court that a decree shall be entered as was entered in the trial court. The cause shall be returned to the trial court for an accounting of the money, property, and other assets, of the church. All assets shall be returned to the plaintiffs-appellees herein.

The Court of Appeals cause numbered 1541 is dismissed, at the costs of the appellant.

*Judgment accordingly.*

STEVENS, P. J., and DOYLE, J., concur.