## Trustees of Oak Grove Missionary Baptist Church v. Ward et al.

(Decided Oct. 25, 1935.)

J. R. LLEWELLYN for appellant.

A. T. W. MANNING and J. J. DAVIS for appellee

Opinion of the Court by Drury, Commissioner—Affirming.

The appellants were unsuccessful as plaintiffs in the trial court.

There are three groups of the litigants affected by this controversy. The appellants Bige Anderson et al. we shall refer to as group A. The appellee Richard Ward et el. we shall refer to as group B, and the other appellees, D. S. Smith et al., we shall refer to as group C.

Group A and group B each claim that the members of it are the true and only trustees of the Oak Grove Missionary Baptist Church and seek to control its property. Both groups A and B admit that the members of group C are the trustees of the Irvine Association of Missionary Baptists and control the Jackson County Baptist Institute, the latter being devoted to educational activities of the Baptist Church in that section of the state.

Group A began this litigation on December 2, 1931, and by its petition, as twice amended, this group sought to obtain an order enjoining the other groups from using or controlling the church building and property and the church records. The trial court held they had not shown themselves entitled to the relief they sought and made this order regarding the records: "Plaintiffs and defendants are each entitled to a record of the minutes and proceedings of the church, and that a copy of the church record book be made and that the plaintiffs and the defendants each pay one half the costs of said copy, and that plaintiffs and defendants draw or cast lots for the original."

## The Controversy.

The Rev. J. Roy Smith became moderator of this church on July 27, 1930. On January 31, 1931, Rev. Smith preached a sermon to which Richard Ward and others took exceptions, and it is claimed Ward interrupted Rev. Smith while the sermon was being delivered.

Ward and others soon began quietly to take steps to get Rev. Smith removed and to install some one else in his stead. These steps were not quiet enough to prevent Rev. Smith from learning what was going on and preparing to maintain his position.

The days fixed for the business meetings of the church were the third Saturdays in each month. At the meeting held on May 17, 1931, it is claimed by group A that sixty-three members were excommunicated. The charges against these members so excluded and the names of the parties charged had been written out by the moderator, the Rev. Smith, who was then the pastor of the church. The church record was filed and made a part of the record in the trial court, but has not been brought to this court, hence we do not know what it shows as to how many members were present and voted for excommunication of these former members, but some of the proof shows those voting therefor were Jas. Bales, his wife, and his daughter and Bige Anderson, his wife, and his two daughters, and the moderator testifies that these seven constituted a majority of the membership present who were not then under charges. Those under charges were not allowed to vote and were voted on and excommunicated, so appellants claim, by these seven. In other parts of the evidence the testimony is that no vote, upon these charges and the proposed excommunication, was taken; but that a motion to excommunicate these sixty-three members was made by Bige Anderson and it was seconded by Jim Bales and the meeting broke up without the motion being acted on. Some fruitless efforts at reconciliation were made and later a council was called for December 2, 1931, to which there had been invited and which was attended by a number of eminent Baptists who were to meet at the church, on that day, but when they reached there copies of a restraining order were served upon them, by which they were forbidden to do so, whereupon they retired to the home of Mrs. Armeldia Anderson and, at her home, it is claimed, they reorganized those present of these sixty-three members as constituting the church and the members of group B were elected as its trustees. Since that time there have been two rival groups of trustees each claiming to be the trustees of the Oak Grove Missionary Baptist Church. The group of learned Baptists that composed this council recognized group B and their adherents as constituting the church and the Irvine Asso-

ciation of Missionary Baptists has done the same, but it is pointed out that neither of these bodies or organizations has any power appellate, revisory, or otherwise over the Oak Grove Missionary Baptist Church and that is true. Neither has this court any power to reverse, revise, or in any way alter or amend the action of the Oak Grove Missionary Baptist Church, and our only question is did the church act? It is a pure democracy; its only valid acts must be acts of a majority of its members present at the time. So it sounds quite anomalous to say seven members excommunicated sixty-three others. That simply cannot be done in a Baptist Church, and the rights of the appellants rest solely upon the affirmation that such a thing was done

This very thing has been attempted before and this very question reached the Supreme Court of the United States in the case of Bouldin v. Alexander, 82 U. S. (15 Wall.) 131, 139, 21 L. Ed. 69, in which case fifteen members had attempted to turn out forty-one, and that court said:

"It may be conceded that we have no power to revise or question ordinary acts of church discipline, or of excision from membership. We have only to do with rights of property. As was said in Shannon v. Frost, 3 B. Mon. [Ky.] 253, we cannot decide who ought to be members of the church, nor whether the excommunicated have been regularly or irregularly cut off. We must take the fact of excommunication as conclusive proof that the persons rescinded are not members. But we may inquire whether the resolution of expulsion was the act of the church, or of persons who were not the church and who consequently had no right to excommunicate others. And, thus inquiring, we hold that the action of the small minority, on the 7th and 10th of June, 1867, by which the old trustees were attempted to be removed, and by which a large number of the church members were attempted to be exscinded, was not the action of the church, and that it was wholly inoperative. In a congregational church, the majority, if they adhere to the organization and to the doctrines, represent the church. An expulsion of the majority by a minority is a void act."

Practically the same thing is said about a similar undertaking in Clapp v. Krug, 232 Ky. 303, 22 S. W. (2d) 1025.

What was said in Bouldin v. Alexander, Shannon v. Frost, and Clapp v. Krug, we approve. Our question, however, relates solely to church property worth approximately $10,000 in which at the beginning of the day of May 17, 1931, each member of the Oak Grove Missionary Baptist Church had an interest and in which at the close of that day appellants assert none of these sixty-three had any interest. There are three ways for members of such a church as this to lose their interest in this property, death, withdrawal, and excommunication. It is not claimed that these sixty-three had died or withdrawn, hence to sustain their position the members of group A must show these sixty-three members were validly excommunicated.

There is a great deal of evidence of the general usages and customs of Baptist Churches, but we are dealing with the Oak Grove Missionary Baptist Church alone, and it is free and independent, it can make its own laws and rules by which both its members and the members of this court are bound in passing upon this question, but there is one rule that this church cannot make. So far as the property rights of a member are concerned, it can make no rule that the courts will treat as valid, by which such property rights can be affected by the action of less than a majority of the members present.

So whether members of this church must be excommunicated singly or may be excommunicated in groups about which there is so much confusion in the evidence, and whether a member under charges can vote or not on his own excommunication or that of others about which there is a like confusion, we express no opinion, for the stubborn fact remains, in a church like this a member's property rights cannot be taken away or in any wise affected by the action of less than a majority of the members present, no matter what or how numerous the rules or charges may be.

Moreover, the very best evidence of what this church did must be found in the book containing the minutes and records of its meetings, that book was before the trial court, but neither it or a copy of it has

been brought here and the omission of such an important part of a record has frequently been held fatal to the hopes of parties situated as are these appellants. Sebree v. Henderson, 205 Ky. 524, 266 S. W. 53; Bryant v. Stephens, 175 Ky. 367, 194 S. W. 327.

The appellants sought to exclude the other members from the use of this church upon the idea that these others had been excommunicated, and the trial court held they had failed to show themselves entitled to that relief. That is the only thing appellants are asking us to review, and being convinced the judgment of the trial court is correct, it is affirmed.