## Yeary et al. v. White et al.

(Decided May 11, 1937.)

N. R. PATTERSON and W. J. STONE for appellants.

HERD & WATSON for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The members of the Old Yellow Creek Baptist Church have failed to heed the Biblical admonition to church members, "Be at peace among yourselves," and have appealed to the courts to settle a controversy growing out of an effort on the part of one faction of the congregation to move the church building to a new location. The building was erected more than thirty years ago on a lot near the city of Middlesboro, Ky., and in the opinion of many of the members of the congregation it has become inadequate for the purpose for which it is being used. It is located on a knoll on an unimproved road, and it is claimed that it is practically inaccessible during certain seasons of the year.

Some time during 1934 the First Baptist Church of Middlesboro offered to convey to the trustees of the Old Yellow Creek Baptist Church two lots at the corner of Thirty-Eighth and Winchester streets in Middlesboro for the erection of a new church thereon. The matter of abandoning the old building and erecting a new building on the lots in the city was discussed at a number of meetings of the church, and at a regular meeting held on April 7, 1934, a motion was adopted to adjourn the meeting to April 22, 1934, when the question of moving the building to the lots on Thirty-Eighth street would be discussed. At the adjourned meeting on April 22d a motion to move the church carried by a vote of 27 to 2, and a committee was appointed to investigate the title to the lots in the city. The committee reported at the regular May meeting and another committee was appointed to meet with the trustees of the First Baptist Church for the purpose of having the title transferred. Thereafter erection of the new building was started and matters proceeded along until the autumn of 1935, when the building was almost ready for occupancy. In the meantime religious services and the regular business meetings were being held in the old building.

At least two of the trustees, Tip Yeary and J. M. Turner, were opposed to moving the church, and at a

regular meeting held on October 5, 1935, a committee was appointed to meet with the trustees and discuss with them the question of their co-operation with the members of the church who desired to move to the new location. The committee reported at the next regular monthly meeting on November 2, 1935, that the trustees refused to agree to the removal of the church to the new location, and Yeary and Turner were asked to resign as trustees. A motion declaring the offices vacant was adopted by a vote of 27 to 3, and L. B. White and Ernest Smith were then elected trustees to fill the vacancies by a vote of 27 to 2. Yeary and Turner were present at this meeting. At the regular monthly meeting held January 4, 1936, the trustees and members of the building and finance committees were authorized to tear down or dispose of the old building; the materials to be used in the new church then being erected, or if sold, the proceeds to be applied to the cost of construction. The organ, bell, and pews were moved from the old church and stored pending the completion of the new church, and the old building was sold for $125.

When the purchasers started to raze the building, Tip Yeary, Riley Rose, and J. M. Turner, suing as trustees of the Old Yellow Creek Baptist Church, and as individuals for themselves and all other members opposed to moving the church, brought this action against L. B. White and others to enjoin them "from further molesting the building of the Old Yellow Creek Baptist Church or any of its property, or from interfering with the plaintiffs in the use and enjoyment of same." They also asked for a mandatory injunction requiring the defendants to return to the church the organ, bell, and pews. It was alleged in the petition that the Old Yellow Creek Baptist Church was an independent and self-governing organization, not subject to the control of any other church organization, individual, or group of individuals, and that defendants were acting contrary to the wishes and interests of a majority of the members.

The defendants in their answer set out the facts heretofore recited and alleged that a regular day each and every month had been set aside by the church and designated as the day upon which business matters would be discussed and passed on by members of the church, and that business meetings were always held on

such days; that all decisions relative to erecting a new church and moving the old church had been made at regular business meetings by a majority of those present, and that actions taken were in conformity with the rules and customs of the church and binding thereon. The affirmative allegations of the answer were controverted of record and proof was heard orally by Hon. E. B. Wilson, who acted as special judge by agreement of the parties. The chancellor found that the actions complained of were taken at regular church meetings in compliance with a long established custom and were binding until rescinded by the congregation at a subsequent meeting. He dismissed the plaintiffs' petition, and they have appealed.

The only question presented for our consideration is one of fact. Was it a rule or custom of the church that business matters of the nature here involved should be disposed of at the regular monthly business meetings? The plaintiffs claim that only routine, unimportant business can be transacted at these meetings, and that it was the custom to send notices to all the members when important business, such as the disposition of property, was to be transacted. The three plaintiffs and two other members of the church testified that it had been the custom to notify all members of the church when important business was to be transacted, but their testimony was indefinite and they were unable to point out any specific instance where notices had been sent. On the other hand, the pastor of the church, the clerk, and one or two others testified that notices were never sent to the members, but all understood that every kind of business could be transacted at the regular meetings.

It is conceded that the first Saturday night in each month had been set aside for business meetings, and that all members knew of this rule. The church records show that these meetings were held regularly. This church is free and independent and can make its own rules by which its members are bound, and so long as those rules are followed, courts will not interfere, even though property rights are involved. Trustees of Oak Grove Missionary Baptist Church v. Ward, 261 Ky. 42, 86 S. W. (2d) 1051; Marsh v. Johnson, 259 Ky. 305, 82 S. W. (2d) 345; Thomas v. Lewis, 224 Ky. 307, 6 S. W. (2d) 255; Bogard v. Boone, 200 Ky. 572, 255 S. W. 112.

The preponderance of the evidence shows that it

was a well-recognized rule of this church that the business of the church should be transacted at the regular monthly meetings without special notices to the members. Action taken at one meeting could be rescinded at a subsequent meeting by a majority of those present. It is claimed that those opposed to the action taken at the regular meeting in November, 1935, went to the church on the first Saturday night in December and found it locked. The evidence shows, however, that only two or three members appeared at that time. The majority of the active members were at the new church on that evening assisting in completing it. The regular monthly business meeting was held on the following morning in the old church after the religious services. The record shows that the matters in dispute were freely discussed, both in and out of the meetings over a period of nearly two years, and those opposed to moving the church had ample opportunity to give expression to their views by vote and otherwise.

The judgment being in accordance with the views herein expressed, it is affirmed.