## Cooper et al. v. Bell et al.
(Decided June 4, 1937.)

64

E. BERTRAM and W. C. DABNEY for appellants.

DUNCAN & DUNCAN and J. M. KENNEDY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Affirming.

This action arose out of a dissension among the members of the First Baptist Church of Monticello, Ky. The appellants, who were plaintiffs below, in behalf of themselves and as representatives of certain other members of the church affiliated with their faction, instituted this action against the defendants, as members and representatives of the opposing faction. The petition is voluminous, and we will not attempt to give a detailed statement of all the allegations. The substance, meaning, an import of it is stated in the statement of appellants' brief in the following language:

"It is alleged in the petition that the membership of the First Baptist Church of Monticello is composed of approximately five hundred members; that these members are scattered over a large area many even residing out of the State of Kentucky; that the church owns in fee real estate of the approximate value of $25,000.00; that a very small minority of the membership have taken charge of the property of the congregation and have placed pad locks on the doors and have taken complete possession of the property and refused to permit certain organizations of the Church Members to meet in said building or to carry on the work of the church; that said minority have taken in as members of said church divers and sundry parties without such candidates for membership in said church being present or consenting thereto; that they have excluded a large number of the members of said church and all these acts of said small minority have been done at meetings other than the regular business meeting of said church and without any notice whatever to the members of the church; that they withhold from

the appellants the books and records of said church and refuse to disclose the names of those they have attempted to exclude or the names of those admitted to membership in said church without being present and that at no time did more than 10 to 20 members vote to do any of the things attempted to be done by this small minority and at no time did a majority of the members present at such meetings vote to do any of the things alleged to have been done by the church.

"The petition as amended contains many other allegations as to the misconduct of the minority of the members of said church and charge that none of said actions were the actions of the church but only the actions of the small minority. See transcript of record, page 2-7-12 and 13-24 and 25.

"It is alleged that said congregation is the owner in fee of two certain parcels of real estate located in the town of Monticello, Kentucky, a description of which is by metes and bounds set out in the original petition; that on one of these lots is located a parsonage and on the other said congregation erected a house of worship in 1917 at a cost of about $25,000.00 and that the plaintiffs and many members of their group contributed large sums of money to the purchase and erection of said church building and to its maintenance and upkeep and that because of such contributions to the purchase and maintenance of said property each of them have an interest therein and they pray the court to protect their rights in said property and if necessary that said property be sold and the extent of the interest of all members therein be ascertained and for any other form of relief to which they may appear entitled and that they have access to the records of said church."

Special and general demurrers were filed to the petition and petition as amended.

It appears that the Honorable J. S. Sandusky, the regular judge of the Twenty-Eighth judicial district, was disqualified to preside in the trial because of relationship to some of the interested parties, and Hon. K. S. Alcorn of Stanford, Ky., the regular judge of the Thirteenth judicial district, was appointed special judge to try the case. The case was submitted upon the de-

murrers to the petition and petition as amended, and the court overruled the special demurrer but sustained the general demurrer, and set out its reasons therefor in a very apt and elaborate opinion which was ordered filed with the record and now appears in the record on appeal before us, in the following language:

"The special demurrer will be overruled. Under section 25 of the Civil Code of Practice, the defendants, in this character of suit, would have the right to defend for the benefit of all of their class. Looking to the purposes to be served by this section, I see no good reason for denying to the plaintiffs, with their allegations as they are, the right to have these defendants treated as the representatives of their class.

"In recent decisions, embracing the last decade, the Court of Appeals has decided in several cases controversies among members of a Baptist Church, and I think those decisions dispose of the case sought to be presented in the petition as amended, and on the general demurrer. They distinguish some earlier deliverances of the court, and make it plain that no matter what construction may properly be placed upon those earlier cases, the views of the court now, and its holdings, are as expressed in these cases. And the court is careful to call attention to the different rule that would apply to certain churches not of the Baptist type of organization. The cases I have in mind are Thomas v. Lewis, 224 Ky. 307, 6 S. W. (2d) 255, 258; Clapp v. Krug, 232 Ky. 303, 22 S. W. (2d) 1025, 1026; and Trustees of Oak Grove Missionary Baptist Church v. Ward, 261 Ky. 42, 86 S. W. (2d) 1051, 1053. They hold in effect:

"As to all matters concerning ecclesiastical affairs—church government, church membership, church discipline—the congregation is supreme, and the courts will not intervene upon complaint as to any controversy based upon any ruling or regulation of that character, unless it is shown by the complaining person or persons that some civil right of his or theirs, secured by contract is about to be or has been violated by reason of such action of the membership. The courts will not act merely upon complaint of irregular meetings, irregular

actions or expulsions from membership, if property rights are not drawn in question. If no civil right has been infringed, the only place for redress is with the church. There can be no permanent division or schism in a Baptist Church as long as it maintains its organization under the rules and regulations adopted for its government. A Baptist Church is a 'pure democracy' and for the acts of membership, as a church, to be valid, they must be the acts of a majority of the membership present, and a court has no right or power to revise or in any way alter any action of the church thus taken.

"Passing from the conclusions reached in those cases to some of the specific declarations of the opinion:

" 'A Baptist congregation, as long as it acts as a local church functioning under its own laws and regulations, may say to all mankind that, "Mine are the gates to open and mine are the gates to close." Thomas v. Lewis. "In rare instances where the local congregation has ceased to function, the jurisdiction of courts may be invoked to determine property rights, but no such question is presented by this record. All questions as to whether the congregation has legally acted are questions that must be determined by the congregation itself, unless restrictions are found on its rights to control its property. The minority is always bound by the majority in a Baptist congregation.' Id.

" 'This court does not have the power to decide who ought to be members of the church, and neither does it have the power to determine whether the church, acting through its congregation, has acted justly or unjustly, regularly or irregularly. These are matters that must be determined by the congregation. Our only judicial power arises from the conflicting claims of the parties to the church property and the use of it, and these claims we must decide as we do all other civil controversies brought to this court for final determination. If the congregation has irregularly removed officers, excluded members, diverted funds, or has been guilty of any other irregularity, the correction of

such abuses rests with the body of the member-ship of the church. The appellants who claim that they have been denied the right to worship in the church probably have as much right to worship there as the others, but only as constituent members of the whole body. They are entitled to the use of the church or other property of the church according to the will of a majority regularly expressed.' Id.

" 'From what has been said and from an examination of the authorities cited in this opinion and many others to the same effect written by this court, it will be seen that there can be no permanent division or schism in a Baptist Church as long as it maintains its organization under the rules and regulations adopted for its government.' Id.

" 'It is well to note that civil courts are not concerned with controversies or questions of a purely ecclesiastical nature, for there is a constitutional guaranty of freedom of religious profession and worship, as well as an equally firmly established separation of church and state. This rule has been adhered to by the courts of this commonwealth with a steady resolution, and they have declined to intervene, except where there has arisen out of such church controversies an invasion or violation of the civil rights of the members. When that situation appears the court will consider in measuring those rights the form of the particular church government, its rules and regulations and its customs and usages.' Clapp v. Krug.

" 'We are not concerned with the validity of the meetings and actions leading up to the alleged expulsion of the deacons and members of the church, except as they relate to the appellee Krug in his official capacity as church clerk. It appears that Krug was under employment and received for such services a salary; hence a contract right is affected which gives the court jurisdiction of his complaint. Gartin v. Penick, 68 Ky. [5 Bush] [110] 122. As to the other members, no civil rights appear to have been infringed, and, if they have been wrongfully excluded, the correction rests with the body of the membership of the church, for, as stated, in Gibson v. Armstrong, 46 Ky. [7 B. Mon.]

481, a dispute in regard to the fact of membership or the rights pertaining to that relation presents an ecclesiastical question, and the decision of the tribunals of the church will be regarded as final by the civil powers.' Id.

" 'A Baptist Church is a pure democracy, and in all matters relating to its government, election of its officers, its articles of faith, and the management of its affairs the local congregation present and voting at a meeting regularly held, on any question, determines the matter finally until the decision is likewise revoked by the congregation. The local congregation determines, by its own by-laws, resolutions, or orders, the time and place as well as the method of ascertaining the will of the majority.' Thomas v. Lewis.

"In the case of Trustees of Oak Grove Missionary Baptist Church v. Ward, the court said: 'Neither has this court any power to reverse, revise, or in any way alter or amend the action of the Oak Grove Missionary Baptist Church, and our only question is did the church act? It is a pure democracy; its only valid acts must be acts of a majority of its members present at the time.'

"In that case, one group within the church had tried to excommunicate another group of the members, who thereupon organized themselves as constituting the church. The former group brought suit, seeking to enjoin the others from using or controlling the church property. It was shown to the satisfaction of the court that the excommunicating group, at the time and on the occasion the effort at exclusion was made, were clearly in the minority in the congregation assembled, and for that reason the second group were not validly excluded from membership. The court recognized, in its opinion, that the acts of the offending group— I should say, the complainants in the suit—were subject to the scrutiny and control of the court simply because property rights were involved, saying: 'Our question, however, relates solely to church property worth approximately $10,000 in which at the beginning of the day of May 17, 1931, each member of the Oak Grove Missionary Baptist Church had an interest and in which at the close

of that day appellants [plaintiffs] assert none of these sixty-three [second group] had any interest.'

"It is plain from these opinions, testing the sufficiency of the petition as amended by the principles there announced, that plaintiffs have presented no controversy within the jurisdiction of the court, unless it appears from the allegations of the plaintiffs that they have been wrongfully expelled, that as a consequence they have suffered a loss of their property rights, *and* that the relief they seek is proper to be granted.

"In Thomas v. Lewis, members of a Baptist congregation split into two factions. Some of one group were expelled by those of the other. As the court phrases it: 'Some of the complaining members were removed from office and expelled in a high-handed and unbaptistic manner.' They filed the suit, and claimed they had been denied access to the church building by those of the other side. They had attempted to effect another organization, claiming to be the church. In the suit they sought to be given the use of the church, but the circuit court refused to grant that relief, either for all or part of them, and the Court of Appeals affirmed the judgment. The opinion uses the expressive declaration that we have already quoted, as to the correction for such irregularities resting with the congregation, not the courts. What the plaintiffs there were seeking was to have the use of the building as an organization, either all or part of the time, and in rejecting their claim the court significantly observes that they probably had as much right to use the building as the other side, but only as constituent members of the church.

"In Clapp v. Krug, one of the actions—there being a group of actions styled under that head and disposed of together—involved the right of the clerk to his office. The court took jurisdiction of that. Another was as to the office of pastor. The court passed upon the question of his right to exercise his office. Other cases involved the expulsions of members, claimed by them to have been wrongful, and their rights to the use and control of the church building. The expulsion of these members had been made at the same meeting when

the clerk was removed, and by the same member-ship; the meeting was irregularly held; it was not held at the time provided by the written rules of the church for such a business meeting. The opinion said it could not, in spite of its pretensions, as made by those calling it, be regarded as a regular business meeting. The court held the removal of the clerk illegal for these reasons, but declined to pass upon the expulsion of the members, as 'no civil rights appear to have been infringed.'

"It would certainly seem that under that decision this case does not present any question of loss of civil rights or their being invaded, assuming that plaintiffs' allegations with regard to the expulsions and the denial of the right to access to the church properly to present such questions. I have serious doubts as to whether those allegations are more than conclusions of the pleader.

"Nor do I think the Oak Grove Missionary Baptist Church Case aids the case for plaintiffs. There the plaintiffs based their claim upon action taken, as the court was of the opinion the evidence showed, simply by a minority of those of the congregation present; and upon that sort of proceeding they sought to oust the other members from the church property. They bottomed their claim to the property upon a transaction without any validity, and that could not be made the basis for affording them a property right nor depriving the others of their property rights.

"I think it manifest from the prayer of the petition as amended that the plaintiffs are seeking in this action to be treated as a church organization distinct from the group represented by defendants. For instance, they ask that they be adjudged to be the Baptist Church of Monticello, Ky., and to represent that church. Other and incidental relief is sought; but that is in fact the object sought. The original petition in its prayer emphasizes this to be the character of relief. It goes so far as to ask, if necessary, that the property be sold and the proceeds divided among the members as their interest and rights may appear. Therefore, they occupy in this respect that position the complainants did in Thomas v. Lewis, and where

the court denying them the right they sought, said that, while they probably had as much right to worship in the church as the other faction, this was a right to be exercised as constituent members of the congregation, not as a separate body, nor to the exclusion of the others, and according to the will of the majority of the congregation.

"I have not referred to the earlier decisions of the Court of Appeals, cited by both parties, for to my mind the rather exhaustive opinion in Thomas v. Lewis, which reviews and arranges as to their holdings many of those cases, makes that superfluous. And equally is this true of any question about section 322 of the Statutes being pertinent to such a situation as this case presents.

"I am of opinion that the general demurrer should be sustained, with leave given plaintiffs to amend, if desired. Judgment will be drawn and entered in accordance with these conclusions."

Before the judgment was entered, plaintiffs filed their second amended petition amplifying the original petition and first amended petition and made certain allegations in regard to the church property and its value, and other matters relating to the factional differences between the opposing factions or members of the church relating to the conduct of the members of the respective factions, and asked that it be adjudged that they (the plaintiffs), and the group of members which they represent, be adjudged title to the use of the church property for one-half of the time, and that the trustees of the church be compelled to furnish plaintiffs and other members represented by them with a key to the locks on the church house doors and for all necessary orders to protect their interest and rights in and to the property, and that if it be found that this can only be done by a sale of the property and a division of the proceeds according to the interests of each of the said group, in that event the property be sold and a division of the proceeds be made.

It appears that the allegations contained in the second amended petition merely amplifies the original petition and the first amendment thereto. The chancellor then filed a supplemental opinion, as follows:

"The second amended petition is an amplification

of the allegations made in the petition and the first amended petition. The controversy, as presented under the allegations prior to the present amendment, is one for the congregation to pass upon, not the courts. As to this, I gave my conclusions in the opinion filed when the demurrer was sustained. It seems to me that the present amendment affords no ground for the intervention of the court in this matter. *If a majority of the congregation, in meeting properly held, should decide the questions at issue in favor of plaintiffs, and the other side should refuse to bow to the decision, then in my opinion, the court may be appealed to in order that the views of the majority may prevail and be given effect.* The second amended petition presents no such question, nor did the previous pleadings, as I read the record. Rather, it appears from this amendment, as it does from the other pleadings contained in the petition as heretofore amended, that what plaintiffs are seeking to have done, is for the court to hold that they are entitled to use this property as a separate congregation part of the time, or to have the property sold and proceeds divided. That is the relief prayed for. But as declared in the cases in my written opinion on file, the congregation of a Baptist church is the supreme authority in all matters of an ecclesiastical nature; there is no such thing in that church as a permanent division, or schism, so long as it functions as a Baptist church organization. If there should develop a division in a congregation, the courts will, upon being properly invoked, give the property to the majority of the members as a body. See the cases referred to in my opinion, and Bogard v. Boone, 200 Ky. 572, 225 S. W. 112. The demurrer will, therefore, be sustained, with leave further to amend, if desired; if not, the petition as now amended will be dismissed. Judgment will be entered accordingly.''

The sentence indicated by italics (italics ours) is the point upon which such controversy as is here presented, turns. If appellants had shown by their pleadings that at a meeting of the members of the church duly assembled according to the church rules, the majority of the members present and voting decided the question in controversy in favor of the plaintiffs, and

the other faction, the defendants, had refused to abide by that decision, then a question for the courts would have been presented. But we agree with the chancellor that the pleadings are of ecclesiastical nature, a matter to be determined by the members of the church.

Upon an examination of the record we find that the opinion of the chancellor clearly presents the issues and the principles of law applicable thereto. Having these views, we deem it unnecessary, and it would indeed be superfluous, for us to attempt to improve upon the very able opinion delivered by the distinguished jurist, and that opinion is hereby adopted as the opinion of this court.

It follows that the judgment of the chancellor must be and is affirmed.