## Cox, et al. v. Prewitt, et al.

(Decided February 16, 1923.)

### Appeal from Whitley Circuit Court.

1. Religious Societies—Effect of Division of Church or Society.—Section 322, Ky. Statutes, providing that where a schism or division

occurs in a religious society each party shall have the use of the church property for divine worship a part of the time, applies where the members of an independent self-governing local church divide into two factions and one faction. claiming to be the true church, attempts to exclude the other from the use of the church house.

2. Religious Societies—Effect of Division of Church or Society.—The court erred in adjudging a faction in an independent self-governing church composed of 48 members the true church, and enjoining the other faction composed of 142 members from using the church premises for divine worship.

3. Religious Societies—Effect of Division of Church or Society.—As the excluded majority faction only asked for the right to use the church one-half of the time, the court should have so adjudged, although the statute provides for a divisional use proportionate to the size of the factions.

M. A. GRAY and W. R. HENRY for appellants.

STEPHENS & STEELY for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Prior to March 28, 1916, a considerable number of people in Corbin, Kentucky, had associated themselves together for the worship of God, and had been conducting services as a religious society without any regular pastor, under the name of the "Church of God." There is no proof of any formal organization, or of the election of any officers, or of any formal agreement or covenant of faith or discipline, but the parties thus associated and acting together recognized and accepted certain ones of their number as officers and were in substantial agreement upon all matters of faith and doctrine, and, in our judgment, constituted a local, independent, self-governing religious society or church.

On March 28, 1916, two adjoining lots were acquired, one by donation and the other by purchase, which were conveyed by deeds of general warranty, containing no trust provisions of any kind, to E. L. Cox, Speed Snyder, Gillis Goff, R. N. Johnson, and W. H. Prewitt, as "trustees of the Church of God." By the efforts of those thus associated together and public subscriptions, a church-house was built upon this property, and same was dedicated in the fall of 1916, free of debt.

Thereafter services were regularly held in the church, in which all of those who had helped to build the house participated without disagreement and without formal

organization of any kind, until in the early summer of 1919 when a tent-meeting was held in Corbin by a minister of an organization also known as the "Church of God" with headquarters at Cleveland, Tennessee.

Prior to this time, this congregation had never had any connection with any other church organization of any kind. At this tent-meeting the preacher conducting it urged upon those in attendance the necessity of some kind of formal organization by the members of the Church of God at Corbin, a definite statement in writing of faith and doctrine, and the adoption of disciplinary rules. She also urged upon them the advisability of an association with the churches of God having headquarters at Cleveland, Tennessee. Some of the members favored this while others were opposed to it and refused to have anything to do with the tent-meeting, and during its progress held meetings regularly in the church-house.

Those in favor of the Corbin church affiliating with the organization having headquarters at Cleveland, Tennessee, on a night in June, 1919, at the home of J. G. Webb, and of which meeting the members of the opposite faction had no notice, effected some kind of an organization and attempted to join the Corbin church with the organization having headquarters at Cleveland, Tennessee. At that meeting they elected as trustees of the local church three of those to whom the church property had been conveyed, as trustees, and two others. These five thereafter locked the church against the other faction, which about the same time elected as trustees of the local church two of those to whom the church property had been conveyed, and three others. These latter "trustees" drew the staple and forcibly opened the church, and the faction they represented held services in the church over the protest of the "trustees" elected by the other faction. After this had been repeated a time or two, the five trustees of the faction desiring a connection with the Cleveland, Tennessee, affiliation of churches calling themselves churches of God, instituted this action against the five trustees elected by the other faction, seeking to enjoin them from interfering with plaintiffs' control of the church-building, and seeking to have the faction represented by plaintiffs adjudged the Church of God at Corbin, and entitled to full control and possession of the church-house. A temporary restraining order was granted, restraining the defendants from in-

terfering with the plaintiffs in the control, management and use of the church-house.

Defendants filed answer and motion to dissolve the temporary restraining order, in which they denied that the plaintiffs had been duly appointed or elected as trustees of the Church of God of Corbin, Kentucky, or that they were acting as such, or entitled to the care, control, or possession of the church-house, alleging that the defendants were the regularly elected and acting trustees of the local organization, and that they and their associates were members of the church and entitled to use the church property for their services.

A great mass of evidence was taken, and upon the hearing of the motion to dissolve the temporary restraining order, an order was entered permitting each faction of the church, during the pendency of the action, to use the church-house for church services one-half of the time. Under this arrangement plaintiffs were given the use and control of the house and premises on the first and third Saturday and Sunday in each month, and on Tuesday and Wednesday of each week for prayer-meeting services, and the defendants and those associated with them were given the use and control of the house and premises each second and fourth Saturday and Sunday in each month, and on Thursday and Friday of each week for prayer-meeting services, and it was ordered that on fifth Sundays neither side should have the use of the building, unless by mutual consent and common agreement.

The court further ordered that:

"Both plaintiffs and defendants shall have prepared and filed with this court on or before the fifth day of its next term, a copy of the church enrollment of *bona fide* members in good standing."

Complying with this latter provision of the order, plaintiffs filed an amended petition setting out the names of 48 persons as the members of the original organization adhering to that faction, and defendants filed an amended answer setting out the names of 142 persons as members affiliating with that faction. Neither of these amended petitions was verified or traversed, and matters were allowed to stand in this condition for about a year, when, upon final submission, the court set aside the order permitting each faction to use the church a part of the time, and entered a final judgment adjudging that the plaintiffs "Are the duly constituted and elected trustees

of the Church of God and have shown themselves entitled to the relief prayed for herein.''

And in accordance with this finding, defendants were ''perpetually enjoined from molesting or interfering with the plaintiffs or the congregation of the Church of God (which included the membership of their church) and from worshipping in the said church-house at any and all times.''

From that judgment the defendants have prosecuted this appeal.

There is some minor contention upon the part of each side that the other has departed from the faith, doctrine and practices of the original organization, but the main question in dispute, to which all others are subsidiary, is whether or not the local organization was, by the action of plaintiffs and their associates, joined with the organization of churches known as the Church of God having headquarters at Cleveland, Tennessee, and whether defendants are thereby excluded from right to the church property, or whether despite the efforts of plaintiffs and their associates the Church of God at Corbin, Kentucky, remained a local, separate, and distinct congregation without any connection with the organization of churches known as the ''Church of God'' having headquarters at Cleveland, Tennessee, and with defendants and their associates still members thereof and entitled as such to use the church.

As there was no written covenant of faith and doctrine, it is utterly impossible to tell which faction, if either, has departed therefrom—if that were important, as it is not in this case—but it is entirely clear that by the judgment of the chancellor a minority faction in the church, without the consent or the participation of the majority of the members, has acquired title, possession, and control of the joint property, annexed it to a body or organization of churches without even showing that the faith and doctrine of such organization has any agreement whatever with the faith and doctrine of the original congregation at Corbin, and deprived a majority of the members of any property right in the church-building and premises they helped to build.

Under no view of the law is it possible, in our opinion, to sustain that judgment. Chapter 17 of Kentucky Statutes, being sections 317-324, inclusive, treats of property devoted by grant, gift, devise, etc., to charitable

uses and religious societies, and defines the duties of trustees in whom the title of such property has been vested.	Section 322 provides:

"In case a schism or division shall take place in a society, the trustees shall permit each party to use the church and appurtenances for divine worship a part of the time, proportioned to the members of each party. The excommunication of one party by the other shall not impair such right, except it be done, *bona fide,* on the grounds of immorality."

There is no charge of immorality of any kind against any member of either faction—except one of the defendants, and that charge in our judgment is not sustained by the evidence—but whether so or not, it could afford ground for his excommunication only by the proper church tribunal, and could not justify the attempted excommunication of him and 141 other members of the defendant faction by the 48 members of the plaintiff faction, at a secret meeting at the home of one of their number; and certainly not so as to affect the rights of the parties in the church property.

Hence we need only decide whether there was a schism or division in the local organization known as the "Church of God" at Corbin, Kentucky, in the contemplation of this provision of the statute, since if there was, the provision is applicable and by its terms plaintiffs and defendants were entitled to the use of the church property and appurtenances for divine worship a part of the time each, proportioned to their respective numbers.

This is true, despite the fact that there are now two sets of trustees, each claiming to have been duly and regularly elected, since they were elected by their respective factions and without participation of or notice to the other faction, and they cannot therefore be the representatives of the whole body of the church, unless one or the other faction now represents the true church to the total exclusion of the other, which necessarily could not be true if there has been but a schism or division in the society within the contemplation of this section of the statutes, since by its very terms it could not apply where one faction had lost all connection with the society.

This section has been before this court for construction a great many times. It was adopted in 1814, and in its then form was held in several cases, beginning with

Shannon v. Frost, 2 B. Mon. 253, not to apply to a church which had not elected any trustees as successors to those in whom the legal title to its property was first vested. Hadden v. Shorn, 8 B. Mon. 70; Berryman v. Reese, 11 B. Mon. 287; and Bennett v. Morgan, 112 Ky. 512, 66 S. W. 287.

This last case was decided after the amendment of the section in 1850, and following the older cases, treated the amendment as making no substantial change in its meaning. That there is, however, a substantial difference in the meaning of the section since its amendment was clearly pointed out in Gartin v. Penick, 5 Bush 110, and especially in Chief Justice Williams' separate opinion concurring in the judgment of the majority of the court, but disagreeing as to some of the reasoning leading thereto. Without discussing the meaning of the statute before its amendment, and ignoring the cases, *supra,* this court, in the case of Poynter v. Phelps, 129 Ky. 381, 111 S. W. 699, upon authority of other cases there cited, held that the section in its present form applied to an independent self-governing congregation of Baptists, whose organization in all material respects resembles the organization of this Church of God at Corbin, Kentucky. About the only difference in the organization of this church and that is, that in the one the organization had been formally effected and the rule of faith and practice definitely stated, whereas in the other the organization seemingly was effected by tacit agreement and acquiescence and without formulating a definite statement of faith and doctrine, but as to which the parties were in substantial agreement.

These differences, in our judgment, are not material, since both are certainly independent, self-governing, local churches, and we are of the opinion that this latter case correctly construes the statute in its present form, and is controlling of the one at bar. The facts of that case are thus summarized in the opinion:

"The case presented by the record is that of a church divided upon questions of local church government; the opposing factions being of practically equal numerical strength, and each faction so embittered against the other as to make it impossible for them to continue members of the same church organization, yet each having some, if not an equal, right to the use of the church building for worship. Neither faction has withdrawn from the

church or been excommunicated. On the contrary, each claims to constitute a majority of the congregation of the Flat Lick Baptist Church, and the right to use the church property for purposes of worship. In view of the situation, what should have been the judgment of the circuit court?

"With respect to church buildings and other property of independent self-governing congregations—such as the Baptist—which was controlled in the management by a majority of voices, if there be no specific trust involved, in case of controversy following a division and complete separation of one part of the congregation from the other, the civil courts will, as a general rule, give the property to the majority of the members, without inquiry as to whether there has been any change in the religious views of the congregation. . . .

"In the case before us, however, neither faction having withdrawn from the Flat Lick Church, each claiming to be in the majority and by reason thereof the right to rule, and there being no church judiciary of appellate jurisdiction to decide the controversy, we think the case simply manifests a schism or division, in the meaning of section 322 Ky. Stat., 1903."

It will be noticed that while there was no material difference in the manner of organization, there is apparently a material difference as to the relative size of the two factions, which are, we think, nevertheless schisms or divisions within the contemplation of the statute, since both are claiming to be the true church and neither has severed its connection therewith. We are not called upon, however, to decide the relative rights of the parties resulting from this apparent difference in the size of the two factions here, because the plaintiffs are seeking to be adjudged an undivided right to the church property, while the defendants are asking only that they be allowed a divisional use thereof, and are not claiming the whole of the property, or the right to use it more than half the time, because of their being in the majority. Moreover, the fact that they are in the majority appears only from the number of names contained in the amended pleadings, and there is no statement in either pleading of how it was ascertained or determined who are members of the church, but it does appear that prior to the division in the congregation there was not only no record kept of the members, but there was not even any uniform method

or formality connected with becoming members of the organization. In this state of the record, it is not satisfactorily shown that the apparent majority of the defendants is real, and as they base no claim thereon, the question is not here and may never arise, since if each faction is permitted to use the church-building a part of the time, it is possible, if not probable, that the opposing factions may compose their differences and become reunited.

The only questions before us now are whether or not the plaintiffs were entitled, as adjudged, to the exclusive use of the church property, or whether the defendants were entitled, as they ask, to a use thereof for a part of the time only.

As we have already indicated, plaintiffs utterly failed to manifest any right to exclude the defendants and their associates from the local church organization, or to deprive them of the right to use the church building a part of the time, or to annex this independent local church to the church organization at Cleveland, Tennessee, or otherwise to control its affairs or property.

On the other hand, it is equally clear that the defendants manifested their right to the use of the church for at least one-half of the time, and, upon a consideration of the whole case, in our judgment the chancellor should have adjudged each faction the use and control of the church a part of the time, as was asked by defendants and as was done in the interlocutory order which he set aside upon final submission.

Wherefore the judgment is reversed and the cause remanded with directions to dismiss the petiiton and to adjudge to the defendants the right to the use and control of the property one-half of the time, and their costs.