## Ennix, et al. v. Owens, et al.

(Decided May 12, 1925.)

### Appeal from Harlan Circuit Court.

1. Religious Societies—Trustees and Majority Members Held Entitled to Use Church for Statutory Part of Time After Joining Another Assembly.—Trustees and majority of members of church, having congregational form of government and right to join or change assembly as congregation saw fit, held entitled to use church and appurtenances, after joining another assembly, for number of Sundays proportioned to their numbers as compared with total membership, under Ky. Stats., section 322, subject to court's modification of allotment as changed conditions warrant; words "of the Mountain Assembly" following word "trustees" in deed to latter being descriptive, not words of limitation.

2. Religious Societies—Trustees Elected at Meeting Elsewhere than at Church Held Without Authority.—Meetings of church members at house of one of them, instead of church, which was regular meeting place, without notice to congregation, were not church meetings, and election of trustees thereat conferred no authority on them to act as such and control church property as against trustees and majority of members joining another assembly.

HALL, JONES & LEE for appellants.

J. B. SNYDER for appellees.

Opinion of the Court by Commissioner Hobson—
Reversing.

In the spring of 1917 L. M. Broyles, H. Ennix, John
Bunch, J. H. Maples and several others concluded to
organize a church at Harlan, Kentucky. They were
members of the denomination known as the Church of
God. Broyles was a minister and also a carpenter by
trade. On the 9th day of July, 1917, they had a deed ex-
ecuted for a lot to Harrison Ennix, John Bunch and J.
H. Maples, trustees of the Church of God of the Moun-
tain Assembly. A little later they built a church on the
lot and on August 16, 1917, the church was organized.
Broyles continued as pastor of the church for a year or
two, then G. A. Fore became pastor. Things went along
smoothly for a year or so. There were two assemblies
of this denomination; one known as the Mountain Assem-
bly, with headquarters at Jellico, Tennessee, the other
known as the Cleveland Assembly, with headquarters at
Cleveland, Tennessee. Broyles and all the other parties
who organized this church adhered to the Mountain As-
sembly. Fore was the moderator of the Mountain As-
sembly at its annual session in 1922, but later concluded
to go with the Cleveland Assembly. He then returned to
Harlan and resigned as the pastor of that church, telling
them that he had joined the other assembly. The con-
gregation refused to accept his resignation and re-
quested him to continue to act as pastor until they could
make some other arrangement. Thus things ran along
until February 24, 1923, when the congregation at a
regular meeting adopted a resolution withdrawing from
the Mountain Assembly and transferring to the Cleve-
land Assembly. Broyles and three other members voted
against the resolution, but one of the three the next day
came over with the majority. On March 19, 1923, a meet-
ing was held at Broyles' house at which three or four
persons were present, and at this meeting a person who
had not theretofore belonged to the congregation was
added thereto, and it was recited that all the other mem-
bers of the church had withdrawn their fellowship from
them by joining the Cleveland Assembly. At another
meeting held at Broyles' house on March 28th by the
same persons, Harrison Ennix and his associates, as
trustees, were excluded from the Church of God of the
Mountain Assembly for taking up fellowship with an-
other church; their office as trustee was declared vacant

and three of those present were elected trustees in their place. All this was without notice to the parties concerned or any other members of the congregation. The new trustees thereupon locked up the church. The old trustees, not recognizing their authority, took off the lock and proceeded to have services. Thereupon the new trustees brought this action to enjoin the old trustees from interfering with the church. The issues were made up, proof was taken and on the final hearing the circuit court entered judgment in favor of the plaintiffs. The defendants or old trustees appeal.

The ground of the decision of the circuit court is that the property was deeded to the "trustees of the Church of God of the Mountain Assembly;" that the old trustees are no longer connected with the Mountain Assembly and that they and all those going with them in the Cleveland Assembly thus lost all right to the church property, under the rule laid down in First Presbyterian Church v. Wilson, 14 Bush 252, and cases following that opinion. But the facts in that case and the cases following it are very different from the facts presented here. That case turned on the fact that the Presbyterian Church has a constitution and form of government to which all of its members subscribe. These are in writing and in definite terms vest the church authority in the various church courts therein designated, and every Presbyterian is bound by the judgment of these courts. On the other hand, there are a number of religious bodies having a congregational form of government in which the congregation has supreme control of its own matters. A congregation may at its election put in its lot with an association, conference or convention, but the decision of these bodies is only advisory. From the proof in the case it is certain that the Church of God belongs to this class. It is voluntary with any congregation whether it will join any assembly. It joins an assembly simply by sending its messenger to it. It is only a member so long as it sends a messenger to the assembly. When it ceases to send a messenger it is no longer carried as a member. In the congregation the majority rules, and there are, so far as the record shows, no officers to direct the affairs of the congregation; the congregation runs itself and there is no authority above the congregation to sit in judgment upon what the congregation does. To illustrate, we quote as follows from one of the ministers who testifies in the record, putting his testimony in narrative

form: "The Mountain Assembly is not a church; each local church sends delegates to represent it and these messengers compose the assembly. After a local church is set in order they send a messenger to the assembly. He presents the letter of the church; the letter is read and the assembly decides to admit the church. The churches always withdrew at any time they wanted to. They have no writing or teaching that prohibits anyone from withdrawing at any time they get ready. The assembly has never asserted a right to control the local church when it desired to leave the Mountain Assembly. I have been a member of the assembly for twelve years and quite a number of churches have dropped out from time to time in this way."

The proof shows that the assembly is composed of the ministers of the denomination who have united with that assembly and the messengers of the churches present at the assembly. There is nothing in the record to indicate that the assembly has ever taken anything more than advisory action in the case of any church. We do not find in the record any substantial contradiction of the testimony above quoted. Plainly the words "of the Mountain Assembly" were used in the deed after the word "trustees" because all of the persons purchasing the property were then connected with the Mountain Assembly and planned that the church they were about to organize should go to the Mountain Assembly. But when they did this they did not bind themselves always to stay in the Mountain Assembly. They had the same right to their assembly relation as any other church, and like any other church the majority rules. When they organized a church in the Mountain Assembly they organized it with all the rights of a church in that assembly, and one of these rights was that the congregation should control its local matters, and this necessarily carries with it the right to change the assembly if they saw fit. To hold otherwise would be to say that the assembly had supreme power over this church, and that it could not separate itself from the assembly in any event. Plainly that was not the understanding of these people when they formed this church. They were all Baptists or Congregationalists in some form or other, and their whole course shows that all the parties from the beginning until this controversy arose regarded that the majority of them could control its policies.

This is plainly not a case where a denomination has a definite form of government and in which each congregation is subordinate to the higher bodies of the church.

Under the evidence the words "of the Mountain Assembly" following the word "trustees" in the deed must be read as matter of description and not words of limitation. The trustees did not hold the property for the Mountain Assembly. They held it for the local congregation. All the parties recognized this. The congregation removed and appointed trustees and controlled the property. The assembly took no action in such matters or in any way recognized the trustees as its trustees. It never claimed the property or attempted to exercise any control over it or the trustees. This congregation and its church stood just as all the other congregations forming the assembly. They all controlled their own churches. The part of the congregation adhering to Mr. Fore is about one hundred. The number of the members who side with Mr. Broyles is not definitely shown, but it is at most not over twenty-five. There is no trouble between these people except the question of the assembly. Section 322, Kentucky Statutes, provides:

> "In case a schism or division shall take place in a society, the trustees shall permit each party to use the church and appurtenances for divine worship a part of the time, proportioned to the members of each party. The excommunication of one party by the other shall not impair such right, except it be done, *bona fide,* on the grounds of immorality."

There is a schism or division in this congregation. The court will enter judgment allowing the appellees to use the church building one Sunday in a month and allowing the appellants to use it for the rest of the time. Either party may use the church on any Sunday falling to the other when it is not used by them. The court may from time to time modify this allotment as changed conditions may warrant. Cox v. Prewitt, 197 Ky. 716; Rose v. Briggs, 205 Ky. 619.

The regular place of church meetings was the church. The meetings held at Broyles' house without notice to the congregation were not church meetings and conferred no authority upon the men then named to act as trustees. They had no authority as trustees from the church or the Mountain Assembly. It is undisputed that before this controversy arose the assembly had never

asserted any claim to church property when a congregation changed from one assembly to the other and that many such changes had occurred. There was nothing in existence giving it any such power or right.

. Appellees have no right to hold or control the church property and have no rights in it except as provided in the statute, which was enacted to protect the rights of the minority in the property where a schism occurs in the church.

Judgment reversed and cause remanded for a judgment as above indicated.