## Bray et al. v. Moses et al.

May 30, 1947.

James S. Forester, Judge.

Geo. R. Pope and J. B. Carter for appellants.

E. L. Morgan for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The controversy is over the right to the use and control of the property of the Church of God at Cawood, Harlan County. The division in the congregation does not arise from any difference in doctrine so that the courts are not called upon to protect a minority from diversion of the property to that of another faith, or from a majority deviating from the doctrine or a characteristic practice of the original organization, as in Parker v. Harper, 295 Ky. 686, 175 S. W. 2d 361.

One of the questions presented is whether the church is to be classified as connectional or presbyterial in form so that a parent or superior authority has control, as in Clay v. Crawford, 298 Ky. 654, 183 S. W. 2d 797, or as congregational so that the will of the majority must be enforced or regarded, as in Thomas v. Lewis, 224 Ky. 307, 6 S. W. 2d 255.

The deed dated September 17, 1943, conveyed the property to three named persons as "trustees of the

Church of God of the Mountain Assembly, Cawood, Kentucky,'' and their successors. In Ennix v. Owens, 209 Ky. 19, 271 S. W. 1091, 1092, ''from the proof in the case'' we held this same Mountain Assembly, which has its headquarters at Jellico, Tenn., to be a voluntary association of independent churches from which the congregation at Harlan had a right to withdraw by a vote of the majority; that ''under the evidence, the words 'of the Mountain Assembly' following the word 'trustees' in the deed must be read as matter of description and not words of limitation.'' The controversy now before us is much like the one in that case. It is claimed by the plaintiffs that a majority of the Cawood congregation had voted to follow their pastor, Rev. Joe Moses, out of the Mountain Assembly into another such organization, that the Assembly had unlawfully undertaken to put the trustees out of office and that it and a minority of the members had excluded them from the church, and undertaken to elect other trustees, who locked the building against the members of the flock adhering to and following their pastor. All this is put in issue, the defendants claiming to represent the majority and justifying their action.

The evidence in this case tends to establish a stronger tie and an acceptance of the authority of the Assembly as superior and paternal than did the record in the Ennix case. It had existed as an unincorporated body, probably since 1907. It was chartered in 1917 under the laws of Tennessee as the ''Church of God,'' the phrase ''Mountain Assembly'' not appearing in the charter, although it had been so called from the beginning. On October 20, 1943 (within a month after this deed was made), the name was changed to ''The Mountain Assembly of the Churches of God,'' but in December, 1944, the amendment was revoked ''leaving the original charter in force as the Church of God.'' The minutes of several annual meetings of the Assembly are filed. They contain the doctrines, covenants and rules of the Church of God and a number of ''Standard Resolutions,'' which vary from year to year in some particulars. At the time the deed to the Cawood property was made as above described, the local church had been a member of the Assembly for several years, so that it could be logically said that the congregation had accepted and are bound

by all the terms of the Assembly organization, coupled with the corporate power to acquire property to be "held, managed, applied and administered by it for the use and benefit of the Church of God under and according to the rules, regulations, faith and doctrine of said Church of God." But it is not necessary to decide whether the Assembly had the legal power which it assumed to exercise in taking control of the property of the Cawood church, recognizing the defendants in this action (who are now the appellants) as the representatives of the faction rightfully entitled to it, and excommunicating the pastor and others for being "out of order" and as secessionists. We find it unnecessary because it is certain that the plaintiffs, led by Moses, voluntarily withdrew from the Assembly. They not only withdrew, but set up and incorporated a separate body to which they gave the name "Churches of God, Original Mountain Assembly." Under this theory the Moses faction could not take the church property with them into the new organization or establish it as an independent congregational body. Clay v. Crawford, 298 Ky. 654, 183 S. W. 2d 797.

We consider the question of the rights of the appellants under their theory of a congregational form of government. Under this classification the voice of a majority is supreme so long as there is no departure from the doctrines of the church. Thomas v. Lewis, 224 Ky. 307, 6 S. W. 2d 255; Parker v. Harper, 295 Ky. 686, 175 S. W. 2d 361. This congregation had been organized perhaps as early as 1907. Under the leadership of Joe Moses they acquired a lot and erected a building. Title was taken in his name. He and his wife were the grantors to the "Trustees of the Church of God of the Mountain Assembly, Cawood, Kentucky." It appears that at one time the church had 90 members or more.

At a congregational meeting held August 3, 1946, the Reverend Moses was elected pastor for one year. He received twelve votes and another preacher received four. Whether there were other members present and not voting is not disclosed. Moses preached in the building on the following Saturday night. It appears that at this meeting he proposed that the congregation dissociate themselves or leave the Mountain Assembly. Six voted by standing or raising hands to follow him and

eleven or more voted not to do so. It also appears that at Sunday School the next day when he was absent, a vote was taken which had the effect of discharging Moses as pastor, although there was no record made of it. When he returned to the community he was informed that he was no longer the pastor. We ignore this, for controversies respecting the expulsion of members or the retention or deposition of a pastor or other internal affairs are without the jurisdiction of civil courts if no civil or property right is involved. We need not decide whether the action at the Saturday night meeting, in which it appears a majority refused to follow Moses, should be regarded as binding or not because of the absence of notice to all the members. See Clapp v. Krug, 232 Ky. 303, 22 S. W. 2d 1025; Kidwell v. Crawford, 298 Ky. 380, 182 S. W. 2d 968. The same is true as to a meeting held at the church on September 6th or 8th, when new trustees were elected in place of those who had followed Moses. They and his other followers were voted out of the church for disloyalty. It appears that at this time Moses and his children had already departed. A decision is unnecessary because it is shown that the Moses faction did not stand on whatever rights they had. They went off and set up a separate organization and within a month attached it to their own newly organized Assembly, which they designated as the "Original," although it was not the original. Some circumstances indicate this was done in order to claim under the deed to the Cawood church. Withdrawing members or seceding minorities lose all rights in the property. Trustees of Oak Grove Missionary Baptist Church v. Ward, 261 Ky. 42, 86 S. W. 2d 1051.

It might appear that under these circumstances and the provisions of KRS 273.120 the court should have directed a division of time in the use of the church to each group proportionately. But this statute has been recently construed to be applicable temporarily until the church authorities or a majority of a congregation make a decision. Jones v. Johnson, 295 Ky. 707, 175 S. W. 2d 370, 371. And decisions seem to have been made in this case by authorities who claimed the power to act and also by a majority of the congregation. The prayers of the respective pleadings are that each group be adjudged the owner and given complete control of the prop-

erty and that their adversaries be enjoined from interfering with them. It seems to us from the consideration of the entire record that the judgment should have gone for the defendants instead of the plaintiffs upon the ground that they did not stand upon whatever rights they had by reason of the alleged illegal or improper action of the defendants and voluntarily left and established another organization.

The testimony of the defendants is all to the effect that they will welcome back the plaintiffs as sheep who have left the fold. Since civil courts interfere only in the temporal affairs of a church to determine property rights upon the basis of facts existing at the commencement of the action, it is deemed beyond our judicial sphere to say what should be done in the future with respect to another congregational meeting. Elston v. Wilborn, 208 Ark. 377, 186 S. W. 2d 662, 158 A. L. R., 179. But we cannot refrain from observing that we find nothing in the rules or laws of the Mountain Assembly that would prevent a majority of the congregation from withdrawing the local church from the association or connection. See Ennix v. Owens, supra, 209 Ky. 19, 271 S. W. 1091; Martin v. Kentucky Christian Conference, 255 Ky. 322, 73 S. W. 2d 849. No moral turpitude is suggested against any party, and we are impressed by the absence of ill-feeling and bitterness. It would seem that the differences between these good people could be easily reconciled and that they should heed the admonition which St. Paul gave to the Church at Corinth, that there should be no division among them.

The judgment is reversed.