L. W. KEITH et al., appellees, v. FIRST BAPTIST CHURCH OF ALGONA, a corporation, et al., appellants.

No. 47877.

(Reported in 50 N.W.2d 803)

■

JANUARY 8, 1952.

REHEARING DENIED APRIL 4, 1952.

Shumway, Kelly & Fristedt, of Algona, for appellants.

Linnan & Lynch, of Algona, for appellees.

MULRONEY, J.—The plaintiffs are regular members of the First Baptist Church of Algona. They seek for themselves, and for others similarly situated, an injunction to restrain the amendment of the articles of incorporation of the church. They name the secretary of state—whose office approves and files amendments to articles of incorporation—and the pastor and other regular members of the church who are alleged to be representative of a group of the church membership.

The articles of incorporation of defendant Church provide: "The purpose of this organization is to support and maintain in the city of Algona, Iowa, permanent public religious worship

and services in harmony with the commonly accepted interpretations and usages of the Baptist denomination; and to co-operate with the Iowa Baptist Convention, and the Northern Baptist Convention, in religious, philanthropic and educational work both in the Home and Foreign Fields", and further provide: "These articles of incorporation expire by statute of limitation in 1979. Before that time they may be altered, amended, or annulled at any annual meeting of the Church by a majority vote of the members present, providing at least thirty days notice of such purpose shall have been made in writing and read plainly at a public meeting of the Church."

At a meeting of all of the members of the church called and held May 3, 1948, pursuant to a notice as provided in said articles of incorporation, a vote was taken and seventy-seven members present voted to amend the said articles of incorporation as proposed in the said notice, and sixty-five members present voted against said amendment. The amendment voted upon at said meeting was as follows:

"1. Article II of the Articles of Incorporation is to be amended by deleting 'and to co-operate with the Iowa Baptist Convention, and the Northern Baptist Convention, in religious, philanthropic, and educational work, both in the Home and Foreign fields' and * * * in lieu of the part deleted the following: 'The purpose of this organization is to support and maintain in the City of Algona, Iowa, permanent, public religious worship and services in harmony with the commonly accepted interpretations and usages of the Baptist denomination. The church will be legally independent of any organization, religious or otherwise, and the giving of benevolences shall be designated by members or organizations of the church to go to any organization or individual for use in religious, philanthropic, or educational work, both in the Home and Foreign fields.' "

It will be noted the amendment deletes the provision with respect to co-operation with the Iowa and Northern Baptist Conventions and provides the church shall be "legally independent of any organization". It is this amendment which plaintiffs sought to restrain. The petition alleges the acquiring of the church property in 1866 and 1869, co-operation with the Iowa

Baptist Convention since 1870, and co-operation with the Northern Baptist Convention since 1910 (the year the Northern Convention was formed), and the defendants, pastor and church members, are identified with a group known as Conservative Baptist Fellowship and are seeking to have the First Baptist Church of Algona withdraw from co-operation with the Conventions and associate with the national and state organizations of the Conservatives. The petition goes on to allege that this results in a schism in that the First Baptist Churches which affiliate themselves with the Northern Baptist Convention and the Iowa Baptist Convention believe that the Baptist religion is based upon the New Testament, and that each member of the organization is entitled to interpret the New Testament in accordance with his own thought and his own conscience, while the Conservative Baptist Fellowship believe that the New Testament may be interpreted by the group for the individual.

The petition then alleges that disaffiliation with the conventions would result in divesting the plaintiffs and those whom they represent with title and ownership of the church realty. The defendants denied some of the allegations of the petition but admitted the allegations concerning the articles and the amendment which was adopted. Several distinguished ministers of the Baptist Church testified for both sides and some members of the church testified for plaintiffs. The trial court found for the plaintiffs, enjoining the amendment and defendants appeal.

I. There is no dispute between the parties as to the legal principles governing such a controversy as this. There is an implied trust that the property acquired by an independent religious society will be devoted to the promulgation of the faith and doctrines of the society and it cannot be diverted to the support of doctrines substantially opposed to the characteristic doctrines of the society by any number of members less than the whole. 70 A. L. R. 83; 45 Am. Jur., Religious Societies, section 55; Mt. Zion Baptist Church v. Whitmore, 83 Iowa 138, 49 N.W. 81, 13 L. R. A. 198. The rule drawn from the authorities by the annotator in 70 A. L. R. 83 is:

"The weight of authority * * * is to the effect that the majority faction of an independent or congregational society, however regular its action or procedure in other respects, may not,

as against a faithful minority, divert the property of the society to another denomination or to the support of doctrines fundamentally opposed to the characteristic doctrines of the society, although the property is subject to no express and specific trust."

In Mt. Zion Baptist Church v. Whitmore, supra, at page 147 of 83 Iowa, we said:

"Upon authority so general as to be beyond question it is held, that property given or set apart to a church or religious association, for its use in the enjoyment and promulgation of its adopted faith and teachings, is by said church or association held in trust for that purpose, and any member of the church or association, less than the whole, may not divert it therefrom."

But the new doctrines must be substantially opposed to the old. We said in Mt. Zion Baptist Church v. Whitmore, supra (page 148):

"Nice distinctions or shades of opinion on doctrinal points or practice do not merit the interference of a court of equity, and it is only when the departure from the faith is so substantial as to amount to a diversion of the property from the trust purpose that courts will interfere."

And as stated in Davis v. Ross, 255 Ala. 668, 671, 53 So.2d 544, 546, "* * * a radical departure must be clearly shown."

II. The record shows that the First Baptist Church of Algona, like every other Baptist Church, is a pure democracy. It is controlled by its own membership, and it is absolutely independent of any external control. It is not subject to any supervisory power, ecclesiastical or otherwise. The ministers who testified for plaintiffs were emphatic in their statements as to the complete independence of the local church. They stated: "The Baptist Church has been spoken of as the truest of Democracies, in that the majority in a Baptist Church may determine definitely what the policy of that particular church will be as to affiliation. * * * The whole picture, the whole gist of the thing, and the whole basis for the Baptist denomination, is the individual church, but its majority vote is supreme. * * * From the beginning the Baptist Church has retained and refused to give up its independence."

All of plaintiffs'· lay witnesses stressed this historic independence of the local churches of the Baptist faith. Here are just a few quotations from their testimony: "In general it is fundamental with the Baptist church that the church governs its own affairs as expressed through the will of the majority, in such things as could be expressed that way. * * * That the decision of the majority of members is supposed to decide all problems arising in a Baptist Church is the fundamental dogma of each Baptist Church. * * * The general rule is that every Baptist Church runs its own affairs without interference or hindrance from any other source."

III. It is equally clear from plaintiffs' own testimony that there is no requirement that a Baptist Church belong to any association or convention. Plaintiffs' ministers stated: "A church does not need to be a member of any association or group to be a Baptist Church. * * * We had Baptist churches long before the conventions came into being; a church may be in one or out of one as it chooses. All Baptist associations and conventions are entirely voluntary."

In plaintiffs' written brief it is conceded that there is no requirement that a local Baptist Church co-operate or affiliate with any association of Baptist churches. This is a statement in plaintiffs' brief of their whole argument: "Appellees concede that the Baptist faith is centuries old and that while they are not required to belong to associations with man-made conventions or other groups they do have this privilege, and that when once such associations have been made, they have the right to continue in that co-operation and to follow the beliefs of said conventions or associations and to prevent those desiring to disassociate from those conventions or groups from taking over their property against their will."

IV. Our first reaction is the utter futility of any court decree to compel a local church "to continue in that co-operation." We learn from the testimony of plaintiffs' ministers that the Iowa State and Northern Conventions are voluntary associations. The Iowa State Convention consists of co-operating Baptist Churches in this state and the Northern Convention consists of co-operating state conventions. Through these conventions flow the enthusiasm, labor and money necessary for the advancement

of the Baptist faith at home and abroad. Perhaps it is not quite true to say a church "belongs" to a convention because, as plaintiffs' witnesses pointed out, the centuries old freedom of the local Baptist Church could not be impinged by a convention association. Plaintiffs' witnesses stated that no action of a convention would be binding on any church. The by-laws of the Iowa State Convention provide in paragraph 12, that "Baptist Churches in Iowa affiliated with the Convention shall comprise only such churches as are actually supporting in good faith the several enterprises of the regular Baptist denomination through the agencies of this Convention." The management and control of the Iowa Baptist Convention is by the delegates elected by any Baptist Church in Iowa affiliated with the Convention.

The articles of incorporation of the Northern Baptist Convention provide in Article I: "Membership: The constituency of the Northern Baptist Convention shall be in all Baptist Churches in the United States which co-operate in its work" and other articles provide any state convention can become an "affiliating member." The Iowa State Convention is, by its articles of incorporation, made an affiliating member of the Northern Convention. There has been a decrease in the number of churches co-operating with the conventions over the past years. In Iowa in 1913 there were 414 Convention Churches and in 1947 there were 235. In Minnesota in 1913 there were 259 Convention Churches and in 1947 there were 119. The yearbook of the Northern Baptist Convention shows 13,245 Convention Churches in 1913 and about 7000 in 1947.

Plaintiffs' witness Dr. Feldman, a Baptist minister from Des Moines, secretary of the Iowa State Baptist Convention and a councilman for several groups in the Northern Baptist Convention, gave this description of the Conventions: "The Northern Baptist Convention is an association of co-operating Baptist groups, that is, co-operating Baptist groups are made up of the American Baptist Foreign Mission Society; the Women's Foreign Baptist Mission Society; the American Baptist Home Mission Society; the Women's Baptist Home Society; American Baptist Publications; Ministers' Benefit Board; the Board of Education; and the various state Conventions of which the Iowa Baptist Convention is one, and a number of city Missionary So-

cieties. It is the various state Conventions and the city Missionary Societies that constitute the members of the Northern Baptist Convention. The Iowa Baptist Convention is a voluntary association of churches in the State of Iowa. Each of these organizations has its own officers, managements and agencies. * * * The primary purpose of the Northern Baptist Convention program is the teaching of the Baptist religion in the missionary fields."

The mechanics of affiliation or co-operation of the local church with the convention groups is the election of delegates to attend the annual meeting of the convention groups. As one of plaintiffs' ministers stated: "The Iowa Baptist Convention and the Northern Baptist Convention is made up of individuals, but in every instance they are also agents of the church which they represent. Unless they had a church affiliation which voted to send them as acting delegates, they never could be seated in either of those conventions. They act in the conventions as individuals, but really as representatives of their respective churches."

It is also firmly established by plaintiffs' testimony that such delegates to attend the convention meetings are elected by majority membership of the local church. One of plaintiffs' ministers stated: "The total membership of the church determines whether or not any individual church will affiliate with any association of churches; or at least a majority of the total membership. * * * The majority in a Baptist Church may determine definitely what the policy of that particular church will be as to affiliation." It seems obvious that disaffiliation with the convention groups could be accomplished by failure to send delegates to their annual meetings.

In reality, plaintiffs, by arguing "a right to continue in that [convention] co-operation" that has existed in the past, are arguing the local church can be compelled to send delegates to all future annual meetings of the conventions. Since delegates are selected by majority vote they in effect ask the court to command a majority vote in favor of convention delegates in order that they have that continuance of convention "co-operation" that has existed in the past. We greatly fear any judicial

tribunal would find it difficult to protect such a so-called right of "co-operation."

V.   Passing to plaintiffs' argument that disassociation with the conventions constitutes a taking of plaintiffs' property we examine the evidence to see if any change in the basic doctrines of the local church is threatened. Here again all of plaintiffs' evidence tells against such an argument. Plaintiffs' ministers said: "It is a true statement that a Baptist Church is free to join any organization that it may see fit subject only to the will of the church itself. * * * A church does not need to be a member of any association or group to be a Baptist Church. * * * A church * * * which chooses to have no ties with the association may still be a Baptist Church. There would be nothing in the organization that keeps them from being a member of the Baptist denomination."

The testimony of the lay witnesses was all to the same effect. They said: "I understand that neither the Northern Baptist Convention nor the Iowa Baptist Convention is a church, but merely affiliations of a group of churches. Our Baptist Church exists independently of them. Even during this unfortunate difficulty, we are all Baptists and members of our Baptist Church here, regardless of our division concerning whom we should co-operate with. * * * The Baptist Church exists and functions independently of whether it co-operates with one mission society or another, or the Conventions, or what not." Such statements by plaintiffs' own witnesses would seem to end all argument that dropping convention affiliations would constitute a basic departure from the historic faith of the local Baptist Church.

VI.   But plaintiffs argue and the trial court held that the adoption of the amendment was but a step in the plan of defendants "to affiliate the church with the Conservative Baptist Movement * * * that there is a fundamental and basic difference in the religious views, beliefs, doctrines, and practices held and adhered to by the Convention Baptists and those held and adhered to by the Conservative Baptists."

Upon the record here presented we cannot find any testimony indicating the defendants contemplate any further amendment to provide for co-operation with the state or national association of conservative churches. It would seem that a future

affiliation of this church with the recently formed state and national associations of Conservative Baptist Churches could only be accomplished by another amendment. The one adopted is quite positive in providing that the church shall be independent of any organization.

Assuming the amendment is but a step toward some affiliation or co-operation of defendant Church with the Conservative group we see no threat to the historic doctrines of the church by such co-operation. The Conservative Baptist Fellowship is an organization of individual Baptists. For instance, Dr. Clearwaters, the Baptist minister of the Fourth Baptist Church of Minneapolis, testified for defendants. He is president of the Conservative Baptist Fellowship but his church is affiliated with the Northern Baptist Convention. It is clear that the defendants could not associate the church with the Conservative Fellowship.

There is no need to go too deeply into what is called the conservative movement. Dr. Feldman explained that in 1920 a movement developed in the Northern Baptist Convention and the Iowa State Convention among a group calling themselves the Fundamentalists. He stated:

"This movement of the Fundamentalists has continued from 1920 to the present time. Its name was changed, but its continuance is evidenced by the fact that through all these years at every annual meeting of the Northern Baptist Convention, the Fundamentalist Convention meets in the same city for several days previous. They had separate officers and the like of their own.

"These people who formed the early Fundamentalist group were regular members of the Northern Baptist Convention and merely held meetings of their own before the regular Northern Baptist Convention would begin. At this time they are known as Conservative Baptist Fellowship. Within the Conservative Baptist Fellowship are other groups; the Conservative Baptist Foreign Fellowship organized the Conservative Baptist Foreign Mission Society approximately five years ago. They nurtured that until it was strong enough to stand alone. A year or two ago, they organized the Conservative Baptist Association. A year or less ago, they organized the Conservative Baptist Home

Mission Society. Most recently they organized the Conservative Baptist Association of America.

"Membership of the Conservative Baptist Association of America is made up of individual Baptists, Baptist groups and churches. The Conservative Baptist Fellowship is. made up only of individuals. Their activities run directly parallel to the ordinary and usual functions and activities of the Northern Baptist Convention."

Several ministers attempted to state the differences in belief that exist between the Convention groups and the Conservative groups. It appears the Conservative groups accept a more literal interpretation of the Bible, while the Convention groups (sometimes called the liberals) adhere to the individual's right to interpret. But the difference is in the thinking of the individuals in the two groups. The functions and activities of the two groups run parallel. Any Baptist has the right and privilege to contribute to Convention or Conservative activities. As we have stated, a Convention or Conservative group is merely a meeting of delegates which local churches have selected presumably by majority vote of members. The mechanics of affiliation of a church with a Convention or Conservative group would be the selection by a majority of the church membership of delegates to attend the meetings of one or the other group. Perhaps also it includes support, financial and otherwise, by the majority membership of the local church of the religious, philanthropic or educational work, of one or the other group. But as we understand the record, each member of the local church is free to support the activities of either group. The amendment preserves to each church member the privilege of contributing to Convention or Conservative activities. All of plaintiffs' lay witnesses said they were free to support the Convention missions and charities.

It would be of no use to state the differences in belief between the two groups, since church affiliation with either is no part of the basic doctrine of a Baptist Church. The basic doctrine of a Baptist Church according to plaintiffs' own witnesses is the complete independence of a church to affiliate or co-operate with any group or association of Baptist Churches. Apparently there are and have been for many years Convention Baptists and Con-

servative Baptists in many Baptist Churches. Affiliation of the church depends on which group is in the majority. The provision in the articles of reincorporation for convention co-operation merely reflects the wishes of the majority of the then membership of the defendant Church. But such a provision would not be binding upon all who by regular succession become the church membership.

Plaintiffs' entire argument is without any supporting testimony showing a basic departure from the long adhered to faith of the defendant Church. We see no use in reviewing the many cases cited where questions concerning withdrawal by a church of a voluntary affiliation are involved. The general rule is that a church with a congregational form of government can by majority vote withdraw from a voluntary affiliation and make a new one. 8 A. L. R. 123; 70 A. L. R. 86; Booker v. Smith, 214 Ark. 102, 214 S.W.2d 513; Honey Creek Regular Baptist Church v. Wilson, Ohio App., 92 N.E.2d 419; Ennix v. Owens, 209 Ky. 19, 271 S.W. 1091; Manning v. Yeager, 203 Ala. 185, 82 So. 435; Calvary Baptist Church of Port Huron v. Shay, 292 Mich. 517, 290 N.W. 890; Kemp v. Lentz, Ohio App., 68 N.E.2d 339.

The case of Ennix v. Owens, supra, is quite closely in point on many of the questions involved here. There the Church of God was organized and deeds to church property received as the Church of God of the Mountain Assembly. Some years later the congregation adopted a resolution withdrawing from the Mountain Assembly and transferring to the Cleveland Assembly. The evidence showed that the church had "a congregational form of government" and that "it is voluntary with any congregation whether it will join any assembly. It joins an assembly simply by sending its messenger to it. It is only a member so long as it sends a messenger to the assembly." (At page 21 of 209 Ky., page 1092 of 271 S.W.) In upholding the resolution the Kentucky Supreme Court stated (page 22):

"When they organized a church in the Mountain Assembly, they organized it with all the rights of a church in that assembly, and one of these rights was that the congregation should control its local matters, and this necessarily carries with it the right to change the assembly if they saw fit."

We are satisfied that plaintiffs have failed to produce requisite proof to support equitable intervention. The decree of the trial court is reversed and the cause remanded for decree dismissing plaintiffs' petition.—Reversed and remanded.

All JUSTICES concur except SMITH, J., not sitting.