**BUNNELL et al. v. CREACY et al.**

**CREACY et al. v. BUNNELL et al.**

Court of Appeals of Kentucky.

March 19, 1954.

Nicholas & Wilson, Munfordville, Terry L. Hatchett, Glasgow, for Bunnell and others.

Davis Williams, Munfordville, C. B. Larimore, Munfordville, for Creacy and others.

CULLEN, Commissioner.

A division arose in the membership of the Church of Christ at Green's Chapel, in Hart County, and the controversy reached the circuit court in the form of litigation over the right to use the church property. The court adjudged that one group, which for convenience we will call the "Populists," was in the majority, and was entitled to first choice in the selection of a worship hour, but that the other group, which we will call the "Royalists," also was entitled to use the church for worship services, having second choice in the selection of a worship hour. The "Royalists" were enjoined from interfering with the "Populists" in the conduct of the latter's services. Both groups have appealed from the judgment. Motions to dismiss the appeals have been overruled.

It is agreed by all concerned that the Church of Christ at Green's Chapel belongs in the "congregational" category, in the sense that the local church is supreme in governing its affairs, there being no parent body or superior church authority having jurisdiction over it. See Thomas v. Lewis, 224 Ky. 307, 6 S.W.2d 255. However, there is a very sharp disagreement as to whether the elders are to rule the church, merely seeking expressions of opinion from the congregation, from time to time, on church affairs, or whether the members of the congregation, under a democratic form of government, have the right to vote and to govern the church through the voice of the majority. The "Royalists" maintain that the church is a "monarchy," ruled by the elders by divine right, whereas the "Populists" insist that the church is a democracy. All of the controversy centers around this one basic disagreement.

The deed by which the church property was conveyed to the trustees of the church does not impress a specific religious trust upon the property, so we are not faced with a question of enforcement of a trust. See Martin v. Kentucky Christian Conference, 255 Ky. 322, 73 S.W.2d 849.

The "Populists," who were the plaintiffs below, contend that as a majority of the congregation, they are entitled to control and occupy the church property exclusively, and that KRS 273.120, providing for apportionment of the use of the property in case of a "division" in a religious society, is not applicable. They rely on the cases, such as Jones v. Johnson, 295 Ky. 707, 175 S.W.2d 370, and Bray v. Moses, 305 Ky. 24, 202 S.W.2d 749, which hold that the statute does not apply to religious societies having the congregational form of government. They also contend that the leader of the "Royalists," R. L. Dunagan, has been excommunicated, and therefore neither he nor the preacher selected by him have any right to use the church property.

The "Royalists" maintain that the "Populists" have departed from the fundamental doctrines of the Church of Christ, and therefore, under the rule stated in Parker v. Harper, 295 Ky. 686, 175 S.W.2d 361, the "Royalists," even though they constitute a minority, are entitled to the church property.

We think it is clear that the court erred in decreeing an apportionment of the use of the church property. Jones v. Johnson, 295 Ky. 707, 175 S.W.2d 370; Bray v. Moses, 305 Ky. 24, 202 S.W.2d 749. The question is, Which group should have been awarded the exclusive use? The answer would seem to be, the majority group, unless they have departed from the fundamental doctrines of the church, Parker v. Harper, 295 Ky. 686, 175 S.W.2d 361.

The only departure from the fundamental doctrines of the church of which the "Populists" are accused consists of their adherence to the belief that the congregation is to have a voting voice in running the affairs of the church. The "Royalists" maintain that rule by the elders is as much a fundamental doctrine of this church as are baptism by immersion and the exclusion of instrumental music.

 We are unwilling to accept the argument of the "Royalists" because we are of the opinion that the form of government of a congregational church is not a matter of theological doctrine within the meaning of the rule that a majority will forfeit its property rights by departing from the fundamental doctrines of the church.

In the field of church *government,* our decisions have recognized only three forms, namely, the prelatical, the denominational or presbyterian, and the congregational or independent. See Thomas v. Lewis, 224 Ky. 307, 6 S.W.2d 255. In the first form, the governing power rests in the higher clergy. In the second, it rests in superior organizations. In the third, by the very nature of things, it can rest only in the members of the congregation, because there is no channel or chain of command from above through which the governing power can be vested elsewhere.

It must be kept in mind that the rule which protects the minority, in case the majority departs from the fundamental doctrines of the church, can and does apply only to churches having the congregational form of government. It is a qualification of the basic rule that the majority should prevail, which also applies only to the congregational churches.

The basic rule, and the qualification, are in the final analysis rules of temporal law, rather than theological doctrines. The courts have declared that if there is no higher authority exercising jurisdiction over a local church, the affairs of that church must be governed by majority rule, so long as the majority observe the fundamental theological doctrines. To hold that majority rule is itself a departure from theological doctrine would be to leave the control of the property of the church in the hands of men whose authority comes from no source recognizable in the law.

It is our opinion that in a church having the congregational form of government, in the sense that it does not recognize any ecclesiastical authority above the local church, an adherence to the belief that the members have a right to vote in church affairs cannot be considered a departure from fundamental doctrine within the meaning of the rule that requires the awarding of the property of a divided congregation to that group which is acting in harmony with the fundamental doctrines of the church.

The judgment is reversed, with directions to enter judgment awarding the exclusive use and control of the church property to the original plaintiffs and those whom they represent, and enjoining the defendants from interfering with such use and control.