Rockingham,
No. 4214.

TRUSTEES OF NEW HAMPSHIRE &c. METHODIST CHURCH

*v.*

METHODIST CHURCH OF GREENLAND & a.

Argued January 5, 1954.

Decided March 31, 1954.

*George P. Cofran, Frank E. George* and *Paul A. Rinden* (*Mr. Cofran* orally), for the plaintiff.

*Edgar A. Blanchard* and *Robert Marvin* for the defendants.

*Ernest R. D'Amours,* Director of Charitable Trusts, furnished no brief.

KENISON, C. J.   The issues in the present dispute must be determined in the light of the historical development of the functions and conduct of both the plaintiff and defendant as corporate religious organizations chartered by the General Court of New Hampshire. Although the Methodist Church was organized in this country in 1784 and members of that faith first "appeared in 1792" in this state, it was not until 1807 that Methodism was recognized by the General Court "as a distinct religious sect or denomination . . . entitled to all the privileges and immunities which any other denomination is entitled to by the Constitution and laws . . . . " 7 N. H. Laws 622; Upton, Revolutionary New Hampshire (1936) 209.

Subject to the general conference and with exceptions not material to this case, the plaintiff is the governing body for Methodism in New Hampshire. The plaintiff was originally incorporated by Laws 1831, *c.* 9. While there have been various changes in name the plaintiff has always had the power to receive, administer and control property and funds for the use of the corporation for charitable and religious purposes. Subsequent amendments appear in Laws 1846, *c.* 455; Laws 1865, *c.* 4178; Laws 1885, *c.* 155; Laws 1907, *cc.* 188, 189; Laws 1929, *c.* 312; Laws 1941, *c.* 285. The plaintiff also enforces the rules, regulations and discipline of the Methodist Church within the state as promulgated by the

general conference. See IV Sweet, Religion on the American Frontier: The Methodists (1946).

The defendant organized in 1809 and was incorporated in 1819; 8 N. H. Laws 820, 821, as "a religious society to be known and called by the name of the Methodist Society of Greenland." It has continued to function as an active church or religious society under various names but is hereinafter referred to as the Methodist Church of Greenland. In 1867 it adopted a constitution, article 2 of which reads as follows: "Article 2. The object of this society shall be the maintenance of Methodist preaching and the institution of Religion according to the doctrines, Discipline and usages of the Methodist Episcopal Church." The same provision and the same language appears in a later constitution which the defendant adopted in 1908. Further details relative to the 1908 constitution will be referred to hereinafter.

In 1922, the defendant joined with the Congregational Society of Greenland to form the Federated Church of Greenland which continued with the sanction of the plaintiff until 1947 when the Federated Church was dissolved. Also in 1947, the defendant voted to join the Congregational Community Church, to sell its parsonage and voted that the plaintiff be requested "to close out our work" in Greenland. The defendant's actions were reported to the plaintiff in 1949, and under the discipline of the Church the Conference voted the abandonment of the Methodist Church of Greenland. The present proceedings were begun in 1950, after the defendant denied that the plaintiff had any rights in their real estate or funds.

The defendant's membership has declined in recent years. "The situation . . . is not an unusual one. Changes in population, and the trend of the younger generation away from remote rural communities, leave the churches with a small membership of elderly people." *Jepperson* v. *Society*, 83 N. H. 387, 391. In this state a religious society or corporation may be independent of any church. *Trinitarian Cong. Soc.* v. *Union Cong. Soc.*, 61 N. H. 384, 394. "Its relations with others are such as it chooses: it may choose none." *Holt* v. *Downs*, 58 N. H. 170, 172. Whatever may have been the rule elsewhere, these decisions establish the law in this jurisdiction. Levy, Chief Justice Shaw and the Church Property Controversy in Massachusetts, 30 B. U. L. Rev. 219, 234. While the rule of our cases tells us what the defendant may do, we must look to their votes and actions to determine the legal effect of what

they did in this case. By incorporation under the name of the Methodist Society of Greenland in 1819, and by the statement of purposes contained in the constitution adopted in 1867, the defendant clearly indicated that its belief and the plan of church government to which it elected to subject itself were those of the Methodist Church. See *Hale* v. *Everett*, 53 N. H. 9, 75.

The dividing line between a church with an associated or connectional form of government on the one hand and a church with an independent or congregational type of government on the other hand is not precise or definite. Zollman, American Church Law (1933) *s.* 271. See *Watson* v. *Jones*, (U. S.) 13 Wall. 679. *Kedroff* v. *St. Nicholas Cathedral*, 344 U. S. 94. Generally speaking, the Methodist Church has been judicially classified as a connectional church with the local churches being considered as only a part of the larger body. *Hoffman* v. *Tieton View Meth. Church*, 33 Wash. (2d) 716; *Turbeville* v. *Morris*, 203 S. C. 287, 299. *Cf. Marr* v. *Galbraith*, 238 Mo. App. 497. The general conference makes and determines the laws and discipline of the Church which is administered by the annual conference composed of ministerial and lay delegations from the local churches within the state. *Clay* v. *Crawford*, 298 Ky. 654; 76 C. J. S., Religious Societies, *s.* 35. Administrative decisions and legislative determinations by the appropriate sectarian agency will be considered persuasive, if not conclusive, in the enforcement and protection of property rights. *Mack* v. *Kime*, 129 Ga. 1; Torpey, Judicial Doctrines of Religious Rights in America (1948), *c.* IV.

One of the plaintiff's requests for findings of fact which was granted by the master is as follows: "6. That the Methodist Church of Greenland, then called the First Methodist Episcopal Society of Greenland, on April 6, 1908, amended the constitution adopted in 1867, stating the object of the society to be the same as provided in the 1867 constitution and further provided in Article IV, Section 2: 'When the Board of Trustees as elected at the last 4th Quarterly Conference shall organize by electing a president, clerk and treasurer in accordance with the Constitution they and their successors in office shall constitute the legal society of the church and shall hold all church property and parsonage property now held by the First Methodist Episcopal Society of Greenland *in trust for the Methodist Episcopal Church*.'" The master suggested, however, that it was a question of law for the court whether this provision ever went into effect. He suggested "that there is no

evidence that the trustees elected at the last 4th Quarterly Conference ever organized as required . . . . " Our examination of the voluminous exhibits in this case convinces us that the suggestion is erroneous and that article IV, section 2 of the 1908 constitution became effective and binding on the defendant.

The only irregularity or defect in the implementation of this important provision in the 1908 constitution was that the person elected as president in the organization of the board was not a trustee, although both the other officers elected, clerk and treasurer, were trustees. However, nine months later the president was elected trustee at a meeting of the 4th Quarterly Conference. This irregularity was the type of defective proceeding which the chapter on religious societies intended to remedy. R. L., c. 281, s. 12, relates to defective proceedings and provides that the proceedings of religious societies and corporations shall not be affected "by reason of any informality in the election of its officers or defect in its record." This statute is applicable and controlling as it relates to the binding adoption of the 1908 constitution by the defendant. The same idea was expressed as early as 1878 in *Davis v. Bradford,* 58 N. H. 476, 480: "It is natural and proper that the secular business of such a religious community should be done in the names of the trustees who hold the legal title of the property. And in such a case it is immaterial whether the trustee or the beneficiary is made the party in the record of litigation. In this state the day of contention for such an irrelevant and unprofitable technicality has gone by . . . Whether the Church be regarded as the principal, doing business by the trustees as its agents, in its own name or in the name of the trustees adopted as the business name of the Church, or the trustees be regarded as the principal, doing business in their own names or in the name of the Church for the Church as beneficiary, appears, in this case, to be a matter of no practical, and, therefore, of no legal, consequence."

The master's suggestion was probably based in part on the fact that the defendant took no other action to change the title by which the property was held but this did not detract from or change its action in agreeing that the trustees should constitute the Methodist Society and should hold its property in trust for the Methodist Church. This conclusion is further buttressed by the fact, which the master found, that the business of the defendant society was transacted at the quarterly conferences and the board of trustees treated as the legal society except that persons are recorded as

members present who were not on the board of trustees.

The combined actions of the defendant in 1947, of voting to sell its parsonage, to join the Congregational Community Church and to request the plaintiff to close its work in Greenland convinced the master that the defendant "decided and agreed to go it alone and entirely to part company and relationship with the State Methodist Organization." On this basis the master recommended that the plaintiff's case be dismissed. The right of the defendant to withdraw from the State Methodist Organization and to join or combine with another denomination cannot be questioned. "But to withdraw and take the church property is another matter." *Presbytery of Bismark* v. *Allen*, 74 N. D. 400, 412. 1 Powell, Real Property, s. 133 (1949).

In our opinion the defendant by the adoption of the 1908 constitution holds its property in trust for the plaintiff. On the record and exhibits in this case we cannot accept the master's conclusion that the defendant was associated with the plaintiff "only as concerns ritualistic and procedural observances." Under our decisions some significance must be attached to the fact that the defendant was organized as a Methodist society. *Hale* v. *Everett*, 53 N. H. 9, 75. The defendant was chartered as a Methodist society and became affiliated with the plaintiff in that capacity under the constitution of 1867 and the constitution of 1908. Its records and meetings have been carried on under Methodist usages and forms since that time. Having subjected itself to the discipline of the Methodist Church, it is not now free to devote and transfer its property and funds to an independent Congregational body. *Bray* v. *Moses*, 305 Ky. 24. The plaintiff had a substantial basis in fact for deciding that the defendant was discontinued or abandoned according to the discipline of the Methodist Church. Therefore this determination has persuasive force and should be protected and enforced in the civil courts. *Brooks* v. *Chinn*, (La. App.) 52 So. (2d) 583; *Hardin* v. *Starnes*, 32 Tenn. App. 66. Torpey, Judicial Doctrines of Religious Rights in America (1948) 317.

It is clear from the record that all parties to this dispute have acted in good faith. There is no schism in the defendant's membership even though several of the more active members have become officers in the Congregational Church. The fact that the defendant, with the sanction of the plaintiff, has made an honest effort to keep its society functioning as a Federated Church does not in any way estop the plaintiff from discontinuing the church

504

at the present time. See *Morris* v. *Featro*, 340 Pa. 354. A decree should be entered for the plaintiff that with the exception of the legacy under the will of Bertha Vaughan the defendant's trustees hold its property subject to such disposition as the annual conference of the plaintiff shall direct in accordance with its discipline. The terms of the decree may be settled by the Superior Court and contain such further orders with respect to accounting and other relief sought as may be consistent with this opinion. It is therefore unnecessary to consider whether the defendant is extinct within the meaning of R. L., *c.* 283, *s.* 7, relating to the dissolution of religious societies.

*Decree for the plaintiff.*

All concurred.